**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INNOVATIVE MEMORY SOLUTIONS, INC.   ) | |
|                                  ) | C.A. No. 14-1480-RGA |
|     Plaintiff,                    ) | |
|                                    ) | **JURY TRIAL DEMANDED** |
| v.                                   ) | |
|                                    ) | **REDACTED PUBLIC** |
| MICRON TECHNOLOGY, INC.,       ) | **VERSION** |
|                                    ) | |
|     Defendant.                ) | |
|                                    ) | |
|                                    ) | |

**<u>INNOVATIVE MEMORY SOLUTIONS, INC.'S RESPONSE IN OPPOSITION TO
MICRON TECHNOLOGY, INC.'S MOTION TO DISQUALIFY TENSEGRITY LAW
GROUP LLP AS COUNSEL FOR INNOVATIVE MEMORY SOLUTIONS, INC.</u>**

Of Counsel:

Matthew D. Powers
Steven S. Cherensky
Azra M. Hadzimehmedovic
William P. Nelson
Natasha M. Saputo
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
(650) 802-6000
matthew.powers@tensegritylawgroup.com
steven.cherensky@tensegritylawgroup.com
azra@tensegritylawgroup.com
william.nelson@tensegritylawgroup.com
natasha.saputo@tensegritylawgroup.com

FARNAN LLP

Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
302-777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Innovative Memory Solutions,
Inc.*

.

# TABLE OF CONTENTS

I.   NATURE AND STAGE OF THE PROCEEDINGS ............................................................ 1

II.  SUMMARY OF ARGUMENT ........................................................................................ 1

III. STATEMENT OF FACTS .............................................................................................. 4

      A.   The Nature And Scope Of The Prior Representation ............................................... 4

      B.   The Nature Of The Current Representation ............................................................. 5

IV.  LEGAL STANDARDS ................................................................................................... 5

V.   ARGUMENT .................................................................................................................. 6

      A.   The Prior Cases Are Not Substantially Related To This Case Due To Allegedly
          Overlapping NAND Flash Patents And Technology .............................................. 6

          1.   The Lexar Cases That Broadly Involved Flash NAND Technology Are Not
              Substantially Related To This Case ...................................................... 6

          2.   A Handful Of Overlapping General Claim Terms In Two Lexar Cases And
              This Case Do Not Create A Substantial Relationship .............................. 7

          3.   Micron's Assertions Regarding Material Prior Art In This Case Are Flawed
              And Also Irrelevant To The "Substantial Relationship" Test .................. 8

          4.   "Substantial Relationship" Does Not Exist Even If Lexar Employees
              Developed Accused Micron NAND Flash Products .............................. 11

          5.   Micron Has Not Shown That Powers and Cherensky Received Any
              Relevant Or Confidential Information Relating to Micron's Accused
              NAND Flash Memory From Lexar ...................................................... 12

          6.   SanDisk-Related Issues From Prior Cases Do Not Relate To IMS's Patents-
              in-Suit Or To Micron's Accused Products ........................................... 15

      B.   Damages, Licensing, and Settlement Issues From Prior Cases Are Not
          Substantially Related To This Case ...................................................................... 16

      C.   Micron Has Not Shown That Any Confidences Powers/Cherensky Learned Will
          Be Relevant To This Case, Let Alone Used To Micron's Detriment ..................... 17

      D.   The Concern For IMS's Choice Of Counsel And The Public Policy Favor
          Denial of Micron's Motion .................................................................................. 19

VI.  CONCLUSION .............................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Cases**

*Bayou Pumps & Prods., Inc. v. Discflo Corp.*,
 No. 06-0962, 2006 U.S. Dist. LEXIS 90067 (W.D. La. Dec. 13, 2006) ................................ 14

*Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-CV-364, 2007 U.S. Dist. LEXIS 35770
 (E.D. Tex. May 16, 2007) ......................................................................................................... 6

*Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB*,
 944 F. Supp. 341 (D.N.J. 1996) ............................................................................................... 5

*E-Contact Techs., LLC v. Apple, Inc.*,
 No. 1:11-CV-426 (E.D. Tex. Sept. 26, 2012) ........................................................................ 16

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*,
 No. C08-04909 SI, 2010 U.S. Dist. LEXIS 35867 (N.D. Cal. Mar. 20, 2010) .......... 10, 11, 20

*Georgia-Pacific Corp.* v. *United States Plywood Corp.*,
 318 F. Supp. 1116 (S.D.N.Y. 1970) ....................................................................................... 16

*In re Dennis Drake*,
 195 S.W.3d 232 (Ct. App. Tex. 2006) .................................................................................... 16

*Innogenetics, N.V. v. Abbott Labs.*,
 512 F.3d 1363 (Fed. Cir. 2008) .............................................................................................. 10

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
 No. 10-1067-LPS, 2011 U.S. Dist. LEXIS 154921 (D. Del. June 22, 2011) ................... 16, 18

*Juxtacomm-Texas Software, LLC v. Axway, Inc.*,
 2010 U.S. Dist. LEXIS 125352 (E.D. Tex. Nov. 29, 2010) .................................................. 16

*Kaminski Bros. v. Detroit Diesel Allison, Div. of Gen. Motors Corp.*,
 638 F. Supp. 414 (M.D. Pa. 1985) ......................................................................................... 16

*M-I LLC v. Stelly*,
 No. 4:09-cv-1552, 2010 U.S. Dist. LEXIS 52736 (S.D. Tex. May 26, 2010) ........................ 14

*Microsoft Corp. v. Commonwealth Scientific & Indust. Research Org.*,
 2007 WL 4376104 (E.D.Tex. 2007) ....................................................................................... 14

*Moyroud v. Itek Corp.*,
 528 F. Supp. 707 (S.D. Fla. 1981) ........................................................................................... 6

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005). .............................................................................................. 7

*Power MOSFET Technologies, L.L.C. v. Siemens AG*,
   No. 2:99-CV-168, 2002 U.S. Dist. LEXIS 27557 (E.D. Tex. Sep. 30, 2002)........... 3, 8, 10, 14

*Reliant Pharms., Inc. v. Par Pharm., Inc.*,
   No. 06-774, 2008 U.S. Dist. LEXIS 33461 (D. Del. Apr. 23, 2008)....................................... 16

*Secure Axcess, LLC v. Dell Inc.*,
   No. 6:11-CV-338, 2012 U.S. Dist. LEXIS 61152 (E.D. Tex. Feb. 23, 2012).................... 6, 16

*Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*,
   491 F. Supp. 2d 510 (D. Del. 2007)........................................................................ 3, 9, 12, 13

*Thorner v. Sony Computer Entm't Am., Inc.*,
   No. 09-1894, 2009 U.S. Dist. LEXIS 108422 (D.N.J. Nov. 20, 2009) ................................... 15

*Valmet Paper Machinery, Inc. v. Beloit Corp.*,
   895 F. Supp. 1158 (W.D. Wis. 1995) ................................................................................... 10

*Walker Digital, LLC v. Axis Commn'ns AB*,
   2012 U.S. Dist. LEXIS 166280 (D. Del. Nov. 21, 2012) ........................................... 1, 2, 5, 16

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Innovative Memory Solutions, Inc. ("IMS") accuses certain Micron Technology, Inc.'s ("Micron's") NAND Flash memory products of infringing eight Patents-in-Suit. No fact discovery has taken place, and no infringement or invalidity disclosures have been served.

## II.     SUMMARY OF ARGUMENT

Under this Court's Local Rules, the American Bar Association Model Rules govern questions of disqualification. The ABA ethics rules for former-client representations reflect reality: large companies hire many attorneys, attorneys represent many companies, and in specialized fields, including patent litigation, these companies and attorneys routinely find themselves on the opposite sides of later cases. Every representation that covers the normal litigation life cycle necessarily familiarizes an attorney with a client's strategies, pressure points, employees, in-house counsel, and documents. Yet the courts have not fashioned a rule that prevents an attorney from ever representing an interest adverse to that of a former client. The general rule is the opposite: "In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation." ABA Model Rule 1.9 (Comment 3).[1] The drastic, generally disfavored remedy of disqualification is only appropriate in the narrow circumstance where the prior representation goes beyond the typical sharing of confidences and is "substantially related" to the present one. The test this Court applies in determining substantial relatedness requires comparison of the nature and scope of the prior and current representations, and importantly, requires the former client to show specific confidences that are themselves the subject matter of the later suit that can be used to the former client's detriment. *Walker Digital, LLC v. Axis Commn'ns AB*, 2012 U.S. Dist. LEXIS

---

[1] *Available at* http://www.americanbar.org/groups/professional_responsibility/publications/ model_rules_of_professional_conduct/rule_1_9_duties_of_former_clients/comment_on_rule_1_ 9.html.

166280 (D. Del. Nov. 21, 2012), at *3, 9. Micron cannot meet this test because *the prior representations ended many years ago and concerned products not accused and patents not asserted in this case,* and never even attempts to show that Powers and Cherensky may have obtained, in prior representations, confidences *specific* to this case that they could use to *harm* Micron. Micron strains to provide numerous bases for finding substantial relationship and attaches a voluminous record, but Micron's motion falls short of the ABA standards and the related test this Court fashioned. Instead, Micron's motion is a failure of quantity over quality.

There was no "substantially related" representation by Powers and Cherensky. The representations of Micron did not even relate to NAND flash as a general category; they related to DRAM and other completely unrelated products. The representations of Lexar (relevant only because Micron acquired Lexar after those litigations were largely concluded), although they related to the general category of NAND flash, did not involve any products accused in this case. In fact, those products did not exist during the pendency of prior NAND-related cases and Micron does not allege otherwise. Micron also fails to meet its burden to show that Powers and Cherensky were exposed to any NAND-related confidences during any prior representation that could actually harm Micron here. The prior cases in which Powers and Cherensky (then at Weil) represented Lexar on NAND technology ended over seven years ago, and only two involved allegations relating to Lexar's NAND products, which are up to *two decades old* and whose features are not relevant here. As the ABA Comment 3 to Rule 1.9 states, "[i]nformation acquired in a prior representation may have been rendered obsolete by the passage of time," and this is such a case. Fundamentally, the patents from the prior litigations and the present case cover distinct concepts and accuse distinct features. That is no surprise. As Micron itself stated,

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████ J. Bobrow ("JB") Ex.

60 at 1-2 (emphasis added). Similarly, IMS's Patents-in-Suit here cover specific, distinct

concepts of accused Micron's Flash products that did not exist over seven years ago when Weil,

including Powers and Cherensky, ceased representing Micron/Lexar on NAND technology.

Moreover, the courts in this and other districts have rejected arguments similar to those

Micron makes here. For example, the court in *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*,

491 F. Supp. 2d 510, 513, 515 (D. Del. 2007), rejected arguments that overlap in prior art,

witnesses or licensing issues warrants disqualification. Similarly, the court in *Power MOSFET

Technologies, L.L.C. v. Siemens AG*, No. 2:99-CV-168, 2002 U.S. Dist. LEXIS 27557 (E.D. Tex.

Sep. 30, 2002), at *8-16, held the matters were not substantially related despite (1) detailed

similarities between accused products in the cases that both involved the same type of Power

MOSFETS, the same Mesh Overlay design, the same issues of P-type material formation, and of

the depth of P-type material, and (2) overlap in prior art and claim terms.

Finally, Micron's conclusory reliance on counsel's generic knowledge of Micron's

litigation and settlement strategies is common to every patent litigation and similarly rejected by

courts that thoughtfully analyzed the facts of each case. If quantity could replace the quality, and

if generic irrelevant confidences could replace the test applied in this Court that requires that

those confidences must be relevant to the present case and must be harmful to the former client,

this would lead to absurd results. It would swallow the "substantial relatedness" test and every

corporate lawyer who represents a client in a patent litigation would be privy to the client's

"litigation and settlement strategy" and could never represent any client in a patent infringement case against the former client. But that is not the rule of this Court. Micron's motion does not supply the required nexus between past representations in unrelated patent cases, and the present case on different patents and different accused products. Micron's motion should be denied.

## III.   STATEMENT OF FACTS

### A.   The Nature And Scope Of The Prior Representation

**The Micron Cases:** The most recent representations, where Micron was the client who hired Powers and Cherensky, did not involve even the broad category of NAND Flash technology. As Micron admits, those cases involved completely unrelated DRAM technologies (*Lucent Techs. Inc.* and *Rambus*) and semiconductor chip technology (*Plasma Physics* case). Br. at 5. ███████████████████████████████████ and even though those are the most recent cases, they also ended at least four years ago. JB Ex. 1, Br. at 4[2]

**The Lexar Cases:** One case involved Lexar's trade secrets, four cases involved Lexar's offensive assertion of its own patents, and three cases involved infringement allegations against Lexar's products. Br. at 5; JB Decl. ¶ 14. In one of those three, *SanDisk Corp. v. Lexar Media Inc.*, the Weil team, including Powers and Cherensky, had no involvement in the patent infringement portion of the case, which settled in 2002, and only briefly became involved in the case years later, in 2006, on contract-related issues when SanDisk tried to reopen the case to extricate its products from Lexar's ITC case against Toshiba. Exs. 1-3;[3] JB Exs. 23, 25. All Lexar cases ended over seven years ago, and the two cases where Weil represented Lexar against infringement allegations were resolved eight-and-a-half years ago. Br. at 5; Exs. 1, 4-10.

---

[2] Micron argues that these Micron cases could still be substantially related based on alleged overlap in standard-setting issues and generic litigation and settlement strategy. As discussed in Sections V.B-C, Micron's arguments fail.

[3] Exhibits to this brief are attached to the Declaration of Azra M. Hadzimehmedovic.

### B.       The Nature Of The Current Representation

IMS accused Micron of infringing eight patents starting from December 15, 2008. Micron does not assert that any of its accused products existed before that date. Some accused products appear to have only been in development in 2008 or later. Feeley Decl. ¶ 6. The accused features of Micron's products were introduced at the earliest in 2009. Hayes Decl. ¶¶ 32-39.

### IV.    LEGAL STANDARDS

"Motions to disqualify are generally disfavored and, therefore, require the moving party to show clearly that continued representation would be impermissible." *Walker Digital, LLC*, 2012 U.S. Dist. LEXIS 166280, at *3.[4] "Resolving the question of whether to disqualify counsel requires the Court to carefully sift all the facts and circumstances. Indeed, whether disqualification is appropriate depends on the facts of the case and is never automatic. The required inquiry necessarily involves a painstaking analysis of the facts." *Id*. at *8; *see also Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) ("Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts.").

Rule 1.9(a) of the ABA Model Rules governs this analysis, and the primary dispute here is whether the prior Lexar/Micron representations are substantially related to the present case. The traditional "substantial relatedness" test employed in this Court, which Micron does not mention, requires a careful analysis of these three questions: "(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be **detrimental** to the former client in the current litigation?" *Walker Digital, LLC*,

---

[4] Internal quotation marks and citations are omitted throughout the brief unless otherwise noted.

2012 U.S. Dist. LEXIS 166280, at *9 (emphasis added). Furthermore, the Court must approach motions to disqualify counsel with "cautious scrutiny, mindful of a litigant's right to the counsel of its choice." *Id*. at *8.

## V.    ARGUMENT

### A.    The Prior Cases Are Not Substantially Related To This Case Due To Allegedly Overlapping NAND Flash Patents And Technology

#### 1.    The Lexar Cases That Broadly Involved Flash NAND Technology Are Not Substantially Related To This Case

Micron argues that all prior Lexar cases (the NAND Flash cases) are "substantially related" to this case by mere generic application to NAND Flash technology. The kinds of generic similarities Micron relies upon, i.e., "overlap in NAND Flash memory technology," or "the same technology at issue" (Br. at 10), are routinely rejected by courts as not meeting the substantial relatedness test. For example, the court in *Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-CV-364, 2007 U.S. Dist. LEXIS 35770 (E.D. Tex. May 16, 2007), found that representations were not substantially related merely because both involved "server architecture." *See also, e.g.*, *Secure Axcess, LLC v. Dell Inc.*, No. 6:11-CV-338, 2012 U.S. Dist. LEXIS 61152 (E.D. Tex. Feb. 23, 2012) (representations were not substantially related merely because both involved "computers communicating over a network."). The court in *Moyroud v. Itek Corp.*, 528 F. Supp. 707, 708-709 (S.D. Fla. 1981), also denied disqualification finding insufficient allegations that both cases related to photocopier machines and the allegedly same activities of the movant in the design of such equipment. Against that backdrop, Micron's argument that Lexar prior cases and this case are substantially related because they both involve NAND Flash technology is insufficient to meet Micron's burden.

Micron misinterprets the decision in *Micrografx, LLC vs. Samsung Telecomm. Am., LLC*, No. 3:13-cv-3599 (N.D. Tex. Mar. 7, 2014) as supporting Micron's sweeping argument that

having "similar technologies [is] alone sufficient" for disqualification. Br. at 10. The Texas court did not so hold. The court, whether correctly or not, found a significant overlap in the technology of patents-in-suit in both cases that "allow[] graphic designers or third parties to update images or graphical objects in a library and deploy the objects to computer programs without rewriting the underlying programs" and similarly found significant overlap in the accused software in both cases, i.e., Google Maps and Chrome browser as used on Samsung's same Galaxy smartphones and tablets. JB Ex. 68 at 6, 7. The Samsung decision neither supports Micron's sweeping, misguided interpretation of the law nor does it support granting Micron's motion on other grounds where Micron has not shown the required nexus between the patented technologies and the accused products.

> ### 2. A Handful Of Overlapping General Claim Terms In Two Lexar Cases And This Case Do Not Create A Substantial Relationship

Micron's assertion that the presence of six claim terms in several Lexar's and Toshiba's patents asserted in the Lexar/Toshiba litigation and in several Patents-in-Suit creates a substantial relationship is similarly unavailing for two independent reasons. First, the presence of the same claim terms in prior art patents and the Patents-in-Suit is irrelevant. It is a basic tenet of claim construction that the intrinsic evidence is the best and principal guide in interpreting any term in a patent. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). The Lexar and Toshiba patents that were construed in the previous litigations are not cited prior art to any Patent-in-Suit, and therefore they do not qualify as intrinsic or probative evidence of the meaning of terms in the asserted patents. Further, the Claim Construction Orders Micron relies upon support this view. For example, the Court in *Toshiba v. Lexar* issued different constructions of the very same term "controller" in two Lexar patents. J. McAlexander ("JM") Decl. Ex. 39 at 15 (see constructions of "controller" in 638 and 997 patents). Second, Micron's position is

equivalent to arguing (as courts have rejected) that any overlap in general technology (e.g., NAND flash) is sufficient, because as Dr. Hayes points out, the terms that Mr. McAlexander picked out are extremely general terms, such as "program," "host" or "simultaneously," that would be common not only to NAND Flash patents generally, but also to other types of memory patents and even disk drive and computer-related patents. Hayes Decl. ¶ 14. If the "substantial relationship" test focused at such a high level of generality, this approach would swallow the test that instead requires a painstaking analysis so as to only exclude closely related representations.

Having not met the required threshold of showing that a substantial relationship is created through the overlap in a handful of claim terms, Micron further speculates that Lexar shared its confidences regarding the meaning of these terms. Micron does not identify the alleged Lexar confidences that might have been shared, or how those unspecified confidences could be used against Micron in interpreting the terms of patents that were never before at issue in discussions with Lexar or Micron or in applying those terms to accused products that did not exist in January 2005 when the claim construction process at issue was completed.

A court that has previously addressed this issue squarely rejected the position similar to Micron's assertion. The court in *Power MOSFET Technologies*, 2002 U.S. Dist. LEXIS 27557, at *10, found the overlap in claim terms between the prior art previously-asserted patents and the patent-in-suit immaterial as the constructions of the prior art patents were applied to the previously accused older versions of ST's product and the constructions of the patent-in-suit would be applied to the presently accused new version of ST's product. The same rationale applies here since the presently accused products did not exist ten years ago when Toshiba's patents were being construed and their constructions applied to Lexar products.

### 3.     Micron's Assertions Regarding Material Prior Art In This Case Are Flawed And Also Irrelevant To The "Substantial Relationship" Test

Micron argues through its expert, Mr. McAlexander, that several Lexar, SanDisk and Toshiba patents from prior litigations are material prior art to several Patents-in-Suit and for that reason there is a substantial relationship between those cases and this case. First, as Dr. Hayes explains through a detailed analysis of the relevant patent specifications, patents Mr. McAlexander identifies are not in fact material prior art to IMS's Patents-in-Suit, let alone invalidating prior art. Hayes Decl. ¶¶ 15-31, 40. For example, Dr. Hayes explains that in some instances, the Lexar patents do not disclose the key inventive feature of the allegedly corresponding IMS patent. *Id*. ¶ 16. In the alternative, for example, Mr. McAlexander strains to find similarity between clearly dissimilar disclosures in the alleged prior art and the asserted IMS patent. *Id*. ¶ 19 (opining that a nonadjustable feature corresponds to a feature that must be adjustable). Further, Mr. McAlexander focuses on irrelevant claims that do not cover the features that IMS is specifically accusing. *Id*. ¶ 31. Therefore, Mr. McAlexander's analysis does not create a substantial relationship between previously litigated patents and Patents-in-Suit.

Second, even if Mr. McAlexander were correct about certain previously litigated patents being material prior art, that is again tantamount to arguing that merely being in the same technology space is sufficient. This very argument has been previously rejected by this Court in *Talecris Biotherapeutics, Inc.*, 491 F. Supp. 2d at 513, 515. There, the Townsend law firm asserted the Tenold patent on behalf of the former client in a prior case, and an attorney who worked on that case at Townsend became the lead attorney in the *Talecris* case asserting the Tenold patent as prior art against parent of former client. Judge Sleet held that despite an existing "overlap to some degree" between the prior and present litigations, "[g]iven that it is the validity of the '191 patent[-in-suit], and not the validity of the Tenold patent [asserted in prior litigation], that is at issue in the present litigation, any confidential information Townsend might have

learned about the Tenold patent" was irrelevant to the validity of the patent-in-suit. The court in *Power MOSFET Technologies* similarly held that the validity of prior art, which was previously litigated by counsel subject to the motion, was irrelevant to the present case; there was no showing that counsel would need to take positions regarding that prior art that would be inconsistent with those taken in prior litigation; and the accused products were different from products subject to prior litigation. 2002 U.S. Dist. LEXIS 27557, at *10-11. For these same reasons, the Court should reject Micron's attempt to use allegedly prior art Lexar, SanDisk, and Toshiba patents to meet the substantial relationship test.

In addition, alleged testimony by two inventors of Lexar "superblock" patents will not be relevant to validity because it will be extrinsic to the disclosures of the prior art patents, which Micron must prove are sufficient on their own to invalidate any asserted claim, and improper to the extent those inventors would testify about what they meant to say in their patent, or what they should have said. *See, e.g., Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1375 (Fed. Cir. 2008) (holding that what a prior art inventor "might have to offer beyond the words of the [] application would be irrelevant to the issue before the jury . . . ."); *see also Valmet Paper Machinery, Inc. v. Beloit Corp.*, 895 F. Supp. 1158, 1167 (W.D. Wis. 1995), *rev'd on other grounds*, 105 F.3d 1409 (Fed. Cir. 1997) (prior art inventor's testimony excluded, in part, because of the potential to confuse the jury to give more weight to the inventor's hindsight interpretation of the claims rather than the actual claims of the patent).

The case Micron relies upon, *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. C08-04909 SI, 2010 U.S. Dist. LEXIS 35867 (N.D. Cal. Mar. 20, 2010), does not involve the assertion that previously litigated prior art causes disqualification. Instead, in *Genentech*, the attorney whose firm was representing the patentee drafted a key declaration for the former client,

now-accused infringer Genentech in an interference proceeding, confirming that its scientist engaged in now allegedly infringing use of the substance which she obtained from the inventors of the patents-in-suit in the present case and which was covered by the patents-in-suit. *Id*. at *5-6. The scientist's communications with the inventors were going to be also used for the license defense. *Id*. at *8. Thus, the prior representation related to former client's (a) use of the same now allegedly infringing product, (b) copying and proof of unexpected results, both of which are relevant to the non-obviousness of the patents-in-suit, and (c) Genentech's license defense. *Id*. at *21-22. None of those factors that proved critical in *Genentech* is present here.

### 4. "Substantial Relationship" Does Not Exist Even If Lexar Employees Developed Accused Micron NAND Flash Products

Micron argues that a substantial relationship also exists because a handful of previous Lexar employees with whom Weil attorneys worked in Lexar cases are among Micron engineers who developed the accused Micron ClearNAND Flash products. Br. at 13-14. Micron does not present declarations from those employees but rather from a Micron employee, Peter Feeley, who declares that he worked with these employees in the 2008-2010 period to develop the now-accused ClearNAND. Thus, the former Lexar employees have not identified any confidential information they shared with Powers and Cherensky during Lexar litigations that could now be used to Micron's determent. Mr. Feeley's declaration remains at a level of general conjecture. He states that "[t]he former Lexar engineers ███████████████████████ because they brought substantial expertise and 'know how' in designing NAND Flash memory controllers to the project based on their prior experience from Lexar." Feeley Decl. ¶ 5. This does not reveal anything specific that would correlate prior and current cases. He also refers to his discussions with certain of those employees about ██████████████████████ *id*. ¶ ¶ 8-9, but never confirms that Micron learned for the first time about ████████████ from the Lexar

11

employees or implemented it in some proprietary way based specifically on Lexar's old products or old "know-how." The reason for this omission is simple: ███ is an old technology, which dates back to the 1950s and 1960s. Hayes Decl. ¶ 40. ████████are used in many applications other than NAND Flash (communication, computing, DRAM memories, etc.) and the fact that ████was involved in prior litigations does not make those litigations substantially related to this one merely because a half-century-old feature, ████ is also relevant to the IMS's asserted 212 Patent and because products accused in this case employ ████ *Id.*

Micron has failed to show that this alleged overlap in witnesses between prior Lexar cases and the present case will be relevant at all, let alone used to Micron's detriment. Moreover, Micron has failed to provide any evidence that, but for Weil's previous representation, such witnesses would not have become known and available through the normal course of discovery. *See Talecris Biotherapeutics, Inc.*, 491 F. Supp. 2d at 515 n.2 (rejecting movant's arguments regarding overlap in witnesses known to counsel based on prior litigation). In fact, Tensegrity attorneys would not find out about these employees' involvement in development of ClearNAND but for specific witness and other discovery disclosures from Micron in this case.

**5.      Micron Has Not Shown That Powers and Cherensky Received Any Relevant Or Confidential Information Relating to Micron's Accused NAND Flash Memory From Lexar**

Micron asserts that Powers and Cherensky received relevant confidences relating to Micron's accused NAND Flash memory in defending Lexar against Toshiba's patents. First, Micron relies on its 2006 NAND Flash memory product, JM Decl. ¶ 72, but Micron's devices containing the accused features were introduced at the earliest in 2009. Hayes Decl. ¶¶ 32-29. Thus, the relatedness in the common, core NAND Flash features and functionality between the 2006 and 2009 Micron products is irrelevant to this case. *Id.* ¶ 32. Second, Micron only shows that the issue of Lexar's use of Micron's Flash memory in a limited number of products Toshiba

was accusing arose a few months before the case settled in September 2006. Even if this were a confidential fact, it has no bearing on this case as explained above. The remainder of Micron's assertions regarding similarities between 2006 Micron Flash accused by Toshiba and a configuration of 2009 Micron Flash accused here in 2015 are based on public—not confidential—datasheets. Exs. 11-13.[5] While Micron may argue it does not have to actually show which confidential information was shared, only that it might have been shared, here Micron has shown that the information that was used is indisputably public, and it has not shown that Lexar possessed, let alone produced or showed its lawyers, confidential information about Micron Flash it was incorporating into Lexar products. "The court should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit." *Talecris Biotherapeutics, Inc.*, 491 F. Supp. 2d at 515. In short, whatever basic common features Micron points to between its 2006 and 2009 Micron products, it neither shows that they are relevant to its infringement of IMS's Patents-in-Suit nor that Powers/Cherensky obtained any confidential information about Micron Flash that they could now use to Micron's detriment.

Moreover, the fact that Micron accused products in this case did not exist at the time of prior Lexar representations on which Micron relies, and the Lexar representations on old, outdated products ended over seven years ago is fatal to Micron's claim here. Micron cites no authority to support an argument that such old, outdated products could meet the substantial relationship test. Moreover, as Professor Hayes explains, the generic features of NAND Flash

---

[5] Micron similarly argues that Lexar shared confidences regarding its trade secrets with Powers and Cherensky. But its expert admits that he testified that those trade secrets became public, JM Decl. ¶ 11, and they did become public, for example, through disclosure in Lexar patents or the 2005 trade secret trial. "Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying." ABA Rule 1.9 (Comment 3).

Mr. McAlexander addressed as alleged overlapping features between the old and now-accused Micron products are basic, common features of NAND Flash devices, have been so for many years, and are not confidential or proprietary. Hayes Decl. ¶¶ 12, 38-40.

In fact, such temporal considerations are critical to determining disqualification. In *Power MOSFET Technologies*, the court held that the detailed similarities between accused products in the cases that both involved the same type of *Power MOSFETS*, the same Mesh Overlay design, the same issues of P-type material formation, and of the depth of P-type material, did not render the cases substantially related. 2002 U.S. Dist. LEXIS 27557, at *8-16; *see also Microsoft Corp. v. Commonwealth Scientific & Indust. Research Org*., 2007 WL 4376104 (E.D.Tex. 2007) (failure to connect prior work to products accused in the present litigation found fatal to movant's claims). The court in *Bayou Pumps & Prods., Inc. v. Discflo Corp.*, No. 06-0962, 2006 U.S. Dist. LEXIS 90067 (W.D. La. Dec. 13, 2006), pointed out "the passage of time alone has diluted any possible advantage that [attorney] might have gained from his prior representation of [movant], because neither he nor his client could reasonably rely on information which is more than seven years old in preparing for trial or to prove the pending claims." *Id*. at *18-19, 20 (attorney not disqualified where he had worked on other similar contracts and some general corporate matters, but the contract at issue post-dated the representation); *see also M-I LLC v. Stelly*, No. 4:09-cv-1552, 2010 U.S. Dist. LEXIS 52736 (S.D. Tex. May 26, 2010), at *15-16 (denying disqualification where the attorney had done work on employment issues for the client but did not work on the particular employment agreements at issue in the subsequent case) (cited by Micron Br. at 9). Analogously, Micron's development and release of the accused products post-dates any representation by Tensegrity attorneys, and the passage of time has rendered irrelevant old, outdated Lexar or Micron products.

14

The only case on which Micron relies in this section, *Thorner v. Sony Computer Entm't Am., Inc.*, No. 09-1894, 2009 U.S. Dist. LEXIS 108422 (D.N.J. Nov. 20, 2009), is consistent with the conclusion that this case is not substantially related to its predecessors. In *Thorner*, disqualification was proper because the attorney in *Thorner* provided legal advice to Sony regarding its exposure on PlayStation products, including in particular the same type of PlayStation controllers that were accused in the present case by attorney's new client. *Id*. at *13-14, *21-22. Micron does not allege that the *same* controllers or the same NAND Flash memory from Lexar cases is involved in this case, and its attempts to link the old, outdated products to the accused products here through a related genealogy based on the very basic features fails to meet the standard set forth in the *Thorner* case Micron itself cites.

### 6.     SanDisk-Related Issues From Prior Cases Do Not Relate To IMS's Patents-in-Suit Or To Micron's Accused Products

SanDisk-related issues Micron patched together from a few previous Lexar cases bear no relationship to IMS's Patents-in-Suit or to Micron's accused products, and are emblematic of Micron's approach to show quantity of contact, not quality that would render prior representations substantially related. First, Micron relies on ███████████████████████████ ████████████████████████████████████████████████████████████ ████████ JB Exs. 29-30. Because here █████████████████████████████ ███████████████████████████████████████████ Second, a smattering of privilege log entries largely referring to █████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████ are at issue or relevant here. Third, Micron relies on a single email that suggests that ██████████████████████████████████and █████████████████████████ ███████████████████████████*Id*. SanDisk is not a party to this case, and there is no

Micron-confidential information from Lexar cases that Tensegrity lawyers obtained about SanDisk that would detrimentally affect Micron's standing in this case.

### B. Damages, Licensing, and Settlement Issues From Prior Cases Are Not Substantially Related To This Case

Micron also argues that the settlements and licenses from prior Lexar and Micron cases are substantially related to the determination of reasonable royalty damages in this case. Micron only specifically identifies the settlements from the Fuji and Toshiba litigations. Two types of licenses are relevant under the *Georgia-Pacific* reasonable royalty analysis. Under *Georgia-Pacific* Factor 1, courts consider the royalties received for licensing the patent-in-suit, proving or tending to prove an established royalty, and under Factor 2, they consider "the rates paid by the licensee for the use of other similar patents." *Georgia-Pacific Corp.* v. *United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Neither of the licenses Micron relies upon is a license to a patent-in-suit or a license under which Micron/Lexar paid to use third-party patents. *See* JB Ex. 61, Sections 4.1, 4.2, 6.1; JB Ex. 63, Sections 2.1, 2.2, 5.1.

Micron also argues that Powers and Cherensky learned confidences about the value of Lexar patents and trade secrets that must be apportioned out in the damages analysis under *Georgia-Pacific* Factor 13. Br. at 17-18. Micron principally relies on snippets of public testimony regarding the alleged benefits of its "superblocks" trade secret, and expected testimony of one of its executive about the "importance of Lexar's technology" in the Fuji case in 2007. Micron fails to identify any confidences that would reflect the value of Lexar patents and trade secrets as allegedly incorporated into the *accused* Micron NAND products, which is the relevant consideration for apportionment of any alleged value of Lexar's old NAND technology or trade secrets in the accused Micron NAND products.

Micron relies on *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, No.

10-1067-LPS, 2011 U.S. Dist. LEXIS 154921 (D. Del. June 22, 2011) for its reference to counsel's knowledge of confidential information about the value plaintiff places on its license portfolio as if that level of general confidential disclosure by itself is sufficient for disqualification. Br. at 17. That Court, however, found that the law firm had done extensive work "in every aspect" of forming and structuring IV's licensing business, and the law firm had helped negotiate the licenses, *including the licenses on the very patents-in-suit*, that could be the subject of counterclaims or defenses in the litigation. *Id.* at *29-31.

Next, Micron's assertions regarding alleged overlapping standards issues between the Rambus case and the current litigation are similarly far-fetched. Rambus FTC investigation involved reasonable and demonstrably non-discriminatory terms ("RAND") royalty rates for various JEDEC Compliant SDRAM memory products, which Rambus was supposed to apply to its innovations. JB Decl. ¶ 36; *see also In the Matter of Rambus, Inc.*, Docket No. 9302, Final Order at 2. Micron alleges that this case will involve the assurance by the original assignee of the NAND-related 537 Patent-in-Suit to T13 to license it at RAND terms. JB Ex. 67. Thus, if standards-setting issues arise in this case, they will relate to an entirely different technology, NAND Flash, and an entirely different standard-setting body, T13. Ex. 14. Thus there is no reasonable overlap between the Rambus's RAND obligations to JEDEC and standard-setting issues in this case.

### C. Micron Has Not Shown That Any Confidences Powers/Cherensky Learned Will Be Relevant To This Case, Let Alone Used To Micron's Detriment

Micron's remaining arguments boil down to generalized assertions regarding alleged

███████████████████████████████████████████████

███████████████ Br. at 19, which the courts have repeatedly rejected. *See, e.g., Secure Axcess, LLC*, 2012 U.S. Dist. LEXIS 61152, at *7, 12 (ex-Weil attorneys not disqualified

although they billed over 2000 hours on two prior patent litigation matters for Dell and Intel and although Dell attempted to show attorneys learned specialized Dell strategies for defending patent infringement cases): Ex. 15, *E-Contact Techs., LLC v. Apple, Inc.*, No. 1:11-CV-426, slip op at 2-7 (E.D. Tex. Sept. 26, 2012) (no disqualification for ex-Weil attorneys who billed over 1000 hours and allegedly learned Samsung's settlement strategies and obtained highly sensitive information about Samsung's approach to settling patent disputes, negotiating patent licenses, and accounting methods and business practices); *Juxtacomm-Texas Software, LLC v. Axway, Inc.*, 2010 U.S. Dist. LEXIS 125352 (E.D. Tex. Nov. 29, 2010), at *21, 23-24 (sharing of strategy which the client adopted for determining how much to pay for a patent license and knowledge of client's power structure insufficient to disqualify).[6]

Micron's conclusory statements—repeated no less than seven times—that it is "inevitable" that Powers and Cherensky will use Micron's "views and strategies" against it do not meet Micron's burden of proving transfer of knowledge of particular practices and procedures that are the subject matter of this suit and that could be used to harm Micron here. It is most telling that Micron is silent about how IMS might change its discovery or settlement strategy in light of allegedly knowing Micron's confidences, and which information IMS would find out through its counsel that would not be readily accessible through discovery.

Moreover, quantity of contact is not a substitute for quality. In *In re Dennis Drake*, 195 S.W.3d 232 (Ct. App. Tex. 2006), the attorney in question had represented a former client for

---

[6] Micron's reliance on the unpublished Federal Circuit decision, *In re Riles*, 2000 U.S. App. LEXIS 20186, issued in 2000, is improper under the rules of that Court. Further, Judge Stark in *Intellectual Ventures*, another case Micron relies upon for the same issue, emphasized that each case involving an effort to deprive a party of the counsel of its choice must be decided on its own; and therefore, it is not surprising that the many Rule 1.9 disqualification cases "cannot be harmonized with perfect principled consistency." 2011 U.S. Dist. LEXIS 154921, at *21, 22 n.6

22 years. Dennis Drake represented the Bexar County Appraisal District (BCAD) in tax disputes as outside counsel, and later sought to represent taxpayers against BCAD. *Id*. at 234. The court noted that there was "no doubt" that Drake was familiar with the "inner workings" of BCAD, because he had formulated defense strategy, prepared for trial, and attended settlement conferences for BCAD for two decades. *Id*. at 236-37. But the court denied disqualification because none of this familiarity with strategy related to "specific factual similarities" between the taxpayer lawsuit, and the tax lawsuits he had handled against taxpayers in the past. *Id*. at 237. Despite Drake's knowledge of the "inner workings" of BCAD, the court found that there was no "reasonable probability" of disclosure of confidential information, because he had no information about the particular taxpayer-plaintiffs' properties from BCAD. *Id*. Micron's contentions fail for the same reason. Even if Powers or Cherensky had knowledge of the inner workings of Micron's litigation department, which they do not, their lack of confidential knowledge that is specific to the IMS case is fatal to Micron's motion. As another court in this Circuit has aptly noted, "we give little weight to [movant's] argument that [the attorney] may have been privy to [movant's] negotiation techniques or defense theories. While litigation has replaced physical battle as a means of dispute resolution, we are not under conditions of surprise flank attacks. Rather, our Federal Rules of Civil Procedure and Evidence put us in a jousting situation where relevant facts are discoverable and open and the outcome depends on the litigator's skill to argue his conclusion in post impressionist fashion from the facts known by all." *Kaminski Bros. v. Detroit Diesel Allison, Div. of Gen. Motors Corp.,* 638 F. Supp. 414, 417 (M.D. Pa. 1985).

> **D.    The Concern For IMS's Choice Of Counsel And The Public Policy Favor Denial of Micron's Motion**

As this Court has noted, the Court must approach motions to disqualify counsel with

"cautious scrutiny, mindful of a litigant's right to the counsel of its choice," *Walker Digital, LLC*, 2012 U.S. Dist. LEXIS 166280, at *8, and because they "have increasingly been used as one weapon in the litigation arsenal," *Reliant Pharms., Inc. v. Par Pharm., Inc.*, No. 06-774, 2008 U.S. Dist. LEXIS 33461 (D. Del. Apr. 23, 2008), at *12. They are often "tactically motivated and disruptive to the litigation process." *Genentech Inc.*, 2010 U.S. Dist. LEXIS 35867, at *11.

Tensegrity Law Group represents IMS's parent, Wi-LAN, in two additional cases against Ericsson. Wi-LAN hired Tensegrity initially in the spring of 2014 to handle an appeal, hoping to overturn a lower court's unfavorable decision in one of its Ericsson cases. *Wi-LAN USA v. Ericsson, Inc.*, 574 Fed. Appx. 931 (Fed. Cir. 2014). Wi-LAN has since retained Tensegrity to represent it on remand in that case, in another Ericsson case, and in this IMS case.

The ABA rules reflect a careful balance between duties of loyalty and confidentiality, and the freedom of lawyers to change associations and new clients to have their choice of counsel. The rules should not "unreasonably hamper lawyers from forming new associations and taking on new clients" and "should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel." ABA Rule 1.9 (Comment 4). "[I]t should be recognized that today many lawyers practice in firms, that many lawyers to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers." *Id*. For these reasons, IMS is entitled to its reasonable choice of legal counsel, and this is a valuable consideration recognized by the federal ethical guidelines.

## VI.   CONCLUSION

For the foregoing reasons, Micron's motion to deprive IMS of its choice of counsel should be denied.

Date: April 2, 2015

Of Counsel:


Matthew D. Powers
Steven S. Cherensky
Azra M. Hadzimehmedovic
William P. Nelson
Natasha M. Saputo
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
(650) 802-6000
matthew.powers@tensegritylawgroup.com
steven.cherensky@tensegritylawgroup.com
azra@tensegritylawgroup.com
william.nelson@tensegritylawgroup.com
natasha.saputo@tensegritylawgroup.com

Respectfully submitted,

FARNAN LLP

 /s/ Brian E. Farnan
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
302-777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

<u>CERTIFICATE OF SERVICE</u>

I, Brian E. Farnan, hereby certify that on April 2, 2015 a copy of Innovative Memory Solutions, Inc.'s Response in Opposition to Micron Technology, Inc.'s Motion to Disqualify Tensegrity Law Group LLP as Counsel for Innovative Memory Solutions, Inc. was served on the following as indicated:

<u>Via Hand Delivery</u>
Jared Bobrow
Jason Lang
Marion Read
Blake Davis
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065

 /s/ Brian E. Farnan_____
Brian E. Farnan