IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INNOVATIVE MEMORY SOLUTIONS, INC.,

    Plaintiff;

  v.

MICRON TECHNOLOGY, INC.,

    Defendant.

Civil Action No. 14-1480-RGA

MEMORANDUM OPINION

Brian E. Farnan, Esq., Michael J. Farnan, Esq., Farnan LLP, Wilmington, DE; Matthew D. Powers, Esq. (argued), Steven S. Cherensky, Esq., Azra M. Hadzimehmedovic, Esq., William P. Nelson, Esq., Natasha M. Suputo, Esq., Tensegrity Law Group, LLP, Redwood Shores, CA, attorneys for Plaintiff.

Frederick L. Cottrell, III, Esq., Travis S. Hunter, Esq., Richards Layton & Finger, P.A., Wilmington, DE; Jared Bobrow, Esq. (argued), Jason Lang, Esq., Marion Read, Esq., Blake Davis, Esq., Weil Gotshal & Manges LLP, Redwood Shores, CA; Doug McClellan, Esq., Melissa Hotze, Esq., Weil Gotshal & Manges LLP, Houston, TX, attorneys for Defendant.

May 15, 2015

1

*Richard G. Andrews*

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is Micron Technology, Inc.'s Motion to Disqualify Tensegrity Law Group LLP. (D.I. 22). The matter has been fully briefed. (D.I. 35, 55, 62). The Court heard oral argument on April 23, 2015. (D.I. 67 [hereinafter, "Tr."]).

For the reasons set forth below, Defendant's motion is **GRANTED**.

**BACKGROUND**

Innovative Memory Solutions, Inc. filed this patent infringement action against Micron on December 12, 2014. (D.I. 1). Plaintiff alleges that Defendant's NAND flash products infringe eight asserted patents, which it recently purchased from SanDisk. (D.I. 35 at p. 1). Plaintiff is represented by Tensegrity Law Group LLP. (*Id.*). Two Tensegrity attorneys, Matthew Powers and Steven Cherensky, were formerly employed by defense counsel, Weil Gotshal & Manges LLP. (*Id.*). While at Weil, Messrs. Powers and Cherensky represented Micron and Lexar Media, Inc., which Micron acquired in 2006, in several patent cases and a trade secret case. (*Id.*). Seven of the patent cases and the trade secret case focused on NAND flash technology. (*Id.*).

**LEGAL STANDARD**

This Court has summarized the relevant legal principles for analysis of the pending motion.

> The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are "generally disfavored" and, therefore, require the moving party to show clearly that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 513 (D. Del. 2007) (internal quotation marks and citations omitted); *see also Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006) (same). Because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important," however, a court may disqualify an attorney "for failing to avoid

2

even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992),

Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The District of Delaware has adopted the Model Rules of Professional Conduct ("M.R.P.C."). *See* D. Del. LR 83.6(d)(2). M.R.P.C. Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

To establish that a representation violates Rule 1.9, four elements must be shown: "(1) the lawyer must have had an attorney-client relationship with the former client; (2) the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter; (3) the interests of the second client must be materially adverse to the interests of the former client; and (4) the former client must not have consented to the representation after consultation." *Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009).

To determine whether a current matter is "substantially related" to a matter involved in a former representation, and, thus, whether disqualification under Rule 1.9 is appropriate, the Court must answer the following three questions: "(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?" *Satellite Fin. Planning Corp, v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987) (internal quotation marks and citations omitted); *see also Talecris*, 491 F. Supp. 2d at 514.

As the Third Circuit has explained, M.R.P.C. 1.9 exists for the purpose of preventing "even the potential that a former client's confidences and secrets may be used against him," to maintain "public confidence in the integrity of the bar," and to fulfill a client's rightful expectation of "the loyalty of his attorney in the matter for which he is retained." *Corn Derivatives*, 748 F.2d at 162. Therefore, in attempting to determine whether a "substantial relationship" exists, "disqualification is proper when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Cardona v. General Motors Corp.*, 942 F. Supp. 968, 973 (D.N.J.1996) (internal quotation marks and citations omitted). While the party seeking disqualification bears the burden of establishing the existence of a substantial relationship, any doubts about whether disqualification is appropriate should be resolved in favor of the moving party, in order to ensure protection of client

3

confidences. *See INA Underwriters v. Nalibotsky*, 594 F. Supp, 1199, 1207 (E.D. Pa. 1984); *see also Buschmeier v. G & G Invs., Inc.*, 2007 WL 4150408, at \*7 (E.D. Pa. Nov. 19, 2007).

To the extent that a motion to disqualify involves imputing an individual lawyer's representation to an entire firm, M.R.P.C. 1.10(a) is also relevant. Rule 1.10(a)(1) provides:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Rule 1.10(a)(2) applies in circumstances in which a firm is conflicted due to a prior representation undertaken by an attorney while the attorney was at a different law firm. Rule 1.10 "imputes one attorney's conflicts to all other attorneys in his firm." *United States v. McDade*, 404 Fed. Appx. 681, 683 (3d Cir. Dec. 22, 2010); *see also Exterior Sys. v. Noble Composites, Inc.*, 210 F. Supp. 2d 1062, 1068 (N.D. Ind. 2002) ("Rule 1.10 addresses situations where a conflict of interest may be imputed to other lawyers associated in the same firm with the tainted lawyer.").

Resolving the question of whether to disqualify counsel requires the Court to "carefully sift all the facts and circumstances." *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 428 (D. Del. 1986) (internal citations and quotation marks omitted). Indeed, "whether disqualification is appropriate depends on the facts of the case and is never automatic. " *Boston Scientific Corp. v. Johnson & Johnson, Inc.*, 647 F. Supp. 2d 369, 374 n.7 (D. Del. 2009). The required inquiry necessarily involves "a painstaking analysis of the facts." *Satellite Fin. Planning*, 652 F. Supp. at 1283 (internal quotation marks omitted); *see also Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J.1996) ("Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts."). Furthermore, the Court approaches motions to disqualify counsel with "cautious scrutiny," mindful of a litigant's right to the counsel of its choice. *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 27-28 (D.D.C. 1984).

*Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd*, 2011 WL 2692968, \*4-\*6

(D. Del. June 22, 2011).

## ANALYSIS

4

The only disputed issue is whether the present representation is substantially related to

Messrs. Powers and Cherensky's prior representation of Lexar and Micron. As discussed above,

this inquiry involves three questions:

> (1) What is the nature and scope of the prior representation at issue? (2) What is the
> nature of the present lawsuit against the former client? (3) In the course of the prior
> representation, might the client have disclosed to his attorney confidences which could be
> relevant to the present action? In particular, could any such confidences be detrimental to
> the former client in the current litigation?

## A.    Nature and Scope of the Prior Representation

While at Weil, Messrs. Powers and Cherensky represented Micron and Lexar in eleven

patent and trade secret cases between 1997 and 2011. (D.I. 35 at p. 1). The most recent

representations related to DRAM technology. (D.I. 55 at p. 4). Seven of the patent cases and the

trade secret case related to NAND flash technology—the technology at issue in this case. (D.I.

35 at p. 1). Messrs. Powers and Cherensky billed Micron and Lexar approximately 4,000 hours

litigating cases involving NAND technology. (Tr. 7).

## B.    Nature of the Present Lawsuit

This is a patent infringement lawsuit. Plaintiff's eight asserted patents were issued at

various times from 2001 to 2011. (D.I. 1 at 2-4). The primary issues will likely be claim

construction, infringement, and validity. Defendant has represented that it plans to raise, among

other defenses, invalidity due to derivation and prior invention.[1]  (*Id.* at 11).

## C.    Confidences

Defendant raises three primary arguments as to why the prior representation is

substantially related to this case. First, the Lexar NAND flash cases involve the same

---

[1] Defendant's Answer is singularly uninformative about the nature of its invalidity defenses.
(D.I. 8 at 8).

technology at issue in this lawsuit. (D.I. 35 at p. 2). Defendant argues that Messrs. Powers and Cherensky learned sensitive confidences about that technology over the course of more than a decade representing Lexar and Micron. (*Id.* at p. 9). While the accused products are more technologically advanced than those at issue in the prior litigation, Defendant argues that there are more similarities than differences between the accused products and the products in the Lexar cases. (Tr. 14-15). Defendant notes that Plaintiff is accusing the products as a whole, not simply the improved features. (*Id.* at 15). In addition, Defendant's expert asserts that nine of the previously-litigated Lexar patents are material prior art in this case. (D.I. 35 at p. 2). As a result, Messrs. Powers and Cherensky might need to cross-examine the same Lexar witnesses they previously worked with and defended. (*Id.* at pp. 2-3). Defendant also argues that there are a number of overlapping claim construction issues. (*Id.* at p. 3).

Second, Defendant argues that Messrs. Powers and Cherensky were extensively involved in a trade secret case that overlaps with Defendant's § 102(f) and § 102(g) defenses. (Tr. 10-12). The trade secret case involved an allegation that Lexar developed NAND trade secrets and communicated them to Toshiba, which in turn communicated them to SanDisk. (*Id.* at 10). The asserted patents were developed by SanDisk. (*Id.*). Defendant intends to argue derivation and prior invention based on the fact pattern underlying the trade secret case. (*Id.* at 9-11). Defendant argues that Messrs. Powers and Cherensky worked extensively with the inventors and engineers that Defendant will be using to support its invalidity case, which gives Plaintiff an advantage. (*Id.* at 12).

Third, Defendant argues that Messrs. Powers and Cherensky were exposed to confidential information relevant to damages from settlement conferences, mediations, and licensing and settlement agreements. (*Id.* at 18-19). The *Georgia Pacific* damages analysis

6

requires apportioning the value of the Lexar NAND technology out of the alleged damages. (*Id.* at 18; D.I. 35 at p. 17). Defendant argues that Messrs. Powers and Cherensky will inevitably use confidential information about the value of the technology against Micron. (D.I. 35 at pp. 16-17).

Plaintiff argues that the NAND flash technology at issue in the Lexar cases is not substantially related because it overlaps with the current technology only at a very basic level. (D.I. 55 at p. 6). Plaintiff's infringement allegations focus on specific features of the accused devices that were not present in NAND technology at the time of the Lexar cases. (Tr. 23). Plaintiff also argues that several of the cases that Defendant argues are relevant to disqualification did not involve NAND flash technology at all. (D.I. 55 at p. 2).

Plaintiff further argues that the fact that several of the Lexar patents are prior art does not make the cases substantially related. (*Id.* at pp. 9-10). Confidential communications must be detrimental to be relevant to disqualification. (Tr. 30). Plaintiff argues that, because it is not trying to invalidate the prior art patents, any communications counsel received would not be detrimental. (*Id.* at 31-32). In addition, only the four corners of a prior art patent are relevant to validity. (*Id.* at 32-33). What an inventor thought or said is not a factor in the validity analysis. (D.I. 55 at p. 10). Plaintiff argues, therefore, that it is irrelevant that counsel previously worked with the inventors of the prior art patents. (Tr. 33).

With respect to trade secrets, Plaintiff argues that there is insufficient evidence in the record linking the Lexar trade secrets to the asserted patents. (*Id.* 35). In addition, Plaintiff argues that because there was a public, seven-week trial, "it's very difficult to see what there is that could be confidential and could be detrimental." (*Id.* at 41). Mr. Powers also maintains that

7

he has no recollection of anything he might have learned in trial preparation for a trial that occurred a decade ago. (*Id.* at 58-59).

Finally, Plaintiff argues that Messrs. Powers and Cherensky's involvement in licensing and settlement is not substantially related to this case. First, Plaintiff notes that settlement agreements are given little weight in determining a reasonable royalty because they are tainted by the threat of litigation. (*Id.* at 45-46). Second, any information they may have gleaned about the value of NAND technology dates to 2006 and does not relate to the features Plaintiff is accusing. (Tr. 42; D.I. 55 at p. 16).

With respect to damages, I do not think that Messrs. Powers and Cherensky received confidential communications that would be relevant to a reasonable royalty analysis. The accused products were introduced in 2008. (Tr. 16). The royalty analysis would therefore be based on a hypothetical negotiation taking place in 2008. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75-76 (Fed. Cir. 2012). Information on the value of NAND technology as of 2006 is therefore highly likely to be outdated.

Nevertheless, I find that the current representation is "substantially related" to the prior Lexar NAND flash patent cases and the trade secret case. In particular, the factual overlap between the trade secret case and Micron's invalidity defenses surely raises "a common-sense inference" that what Messrs. Powers and Cherensky learned from their former client could be used against Micron. *See Intellectual Ventures*, 2011 WL 2692968, at *5. The fact that there was a lengthy public trial does not mean that all confidences became public. It seems to me that the opposite is true. At the time, counsel put their best case forward. The weaknesses in the case are what would be kept back, and those are precisely the points that would be detrimental to Micron.

8

In addition, the fact that Messrs. Powers and Cherensky might be required to depose and cross examine the very same witnesses they previously represented creates the appearance of switching sides. While it is true that inventor testimony is not relevant to whether a prior art patent is invalidating, it is impossible to know whether potentially detrimental confidences were shared during deposition and trial preparation. As discussed above, "any doubts about whether disqualification is appropriate should be resolved in favor of the moving party, in order to ensure protection of client confidences." *Id.*

In light of Messrs. Powers and Cherensky's lengthy and involved experience with Lexar and Micron and the factual overlap between past and present representations, I find that disqualification is appropriate. Pursuant to Rule 1.10(a)(2), this disqualification also applies to Tensegrity Law Group.

## CONCLUSION

For the reasons set forth herein, Defendant's motion is **GRANTED**. A separate order will be entered.

9