IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INNOVATIVE MEMORY SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC., <br><br> Defendant. | Civil Action No. 1:14-cv-1480-RGA <br><br> **JURY TRIAL DEMANDED** |

**MICRON TECHNOLOGY, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION
<u>FOR JUDGMENT ON THE PLEADINGS</u>**

OF COUNSEL:

Jared Bobrow (*Pro Hac Vice*)
Jason Lang (*Pro Hac Vice*)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Tel:    +1 650 614 7400
jbobrow@orrick.com
jlang@orrick.com

Frederick L. Cottrell, III
Travis Steven Hunter
Tyler E. Cragg
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
Tel:  + 1-302-658-6541
cottrell@rlf.com
hunter@rlf.com
cragg@rlf.com

DATED: DECEMBER 23, 2020

## TABLE OF CONTENTS

Page

I. NATURE AND STAGE OF PROCEEDINGS .................................................................. 1
II. SUMMARY OF ARGUMENT ........................................................................................ 1
III. STATEMENT OF FACTS ............................................................................................... 2
IV. THE '063 PATENT IS INVALID UNDER SECTION 101 ............................................ 4
    A. The Law Of Patent Ineligibility ............................................................................ 4
    B. The Asserted Claims Are Abstract Under The First Step Of Alice ...................... 5
        1. The Asserted Claims are directed to the abstract idea of limiting a multi-use object to a single use ................................................................ 5
        2. The Asserted Claims are not directed to a specific improvement to the way computers operate ........................................................................ 10
    C. The Asserted Claims Lack An Inventive Concept .............................................. 12
V. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ......................................................................................5, 8, 9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ................................................................................................... *passim*

*Am. Axle & Mfg. v. Neapco Holdings LLC*,
    967 F.3d 1285 (Fed. Cir. 2019) ..................................................................................................9

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 561 U.S. 593 (2010) ...........................4

*B# On Demand LLC v. Spotify Tech. S.A.*,
    Civil Action No. 19-2077-RGA, 2020 WL 5369185 (D. Del. Sept. 8, 2020) ...................9, 10

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ..........................................................................................12, 14

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ...............................................................................................5, 6

*Data Engine Techs. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018) .....................................................................................................4

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ....................................................................................8, 9, 10

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ................................................................................................6, 8

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ..................................................................................................10

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ........................................................................................7, 12, 13

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) .....................................................................................................6

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) .....................................................................................................8

*Jackson v. Broad. Music, Inc.*,
   No. 04 CV 5948(TPG), 2006 WL 250524 (S.D.N.Y. Jan. 31, 2006) ........................................ 6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) ............................................................................................................... 14

*Move, Inc. v. Real Estate All., Ltd.*,
   721 F. App'x 950 (Fed. Cir. 2018) ...................................................................................... 10

*Parker v. Flook*,
   437 U.S. 584 (1978) ............................................................................................................. 12

*PostX Corp. v. Secure Data in Motion, Inc.*,
   No. C 02-04483 SI, 2004 WL 2663518 (N.D. Cal. Nov. 20, 2004) ....................................... 6

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ............................................................................................. 9

*Scott v. City of White Plains*,
   No. 10 Civ. 1887(KBF), 2012 WL 1267873 (S.D.N.Y. Apr. 10, 2012) ................................ 6

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017) .............................................................................................. 5

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ............................................................................................ 4

*Southmark Prime Plus, Ltd. P'ship v. Falzone*,
   776 F. Supp. 888 (D. Del. 1991) ........................................................................................... 6

*TriPlay, Inc. v. WhatsApp Inc.*,
   No. 13-1703-LPS-CJB, 2018 WL 1479027 (D. Del. Mar. 27, 2018) .................................. 12

*Two-Way Media Ltd. v. Comcast Cable Commc'ns., LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) .................................................................................. *passim*

*Univ. of Fla. Research Found., Inc. v. GE Co.*,
   916 F.3d 1363 (Fed. Cir. 2019) .......................................................................................... 10

**Statutes**

35 U.S.C. § 101 ............................................................................................................... *passim*

**Other Authorities**

Fed. R. Evid. 201 .......................................................................................................................... 6

Fed. R. Civ. P. 12 ................................................................................................................... 4, 6

**I.      NATURE AND STAGE OF PROCEEDINGS**

This is a patent case brought by Innovative Memory Systems, Inc. ("IMS") against Micron Technology, Inc. ("Micron"). Only two patents are left in the case: U.S. Patent No. 7,000,063 (the "'063 patent") and U.S. Patent No. 6,901,498 (the "'498 patent," and collectively "the Asserted Patents"). The Court has construed the claims of the Asserted Patents. D.I. 154. The parties are proceeding with fact discovery, which is scheduled to close March 2, 2021. D.I. 118. Trial is scheduled for December 13, 2021. On December 4, 2020, the Court granted in part and denied in part Micron's motion to dismiss the First Amended Complaint. D.I. 157. Micron filed its Answer to IMS's First Amended Complaint on December 15, 2020, thereby closing the pleadings. D.I. 162. This is Micron's motion for judgment on the pleadings that the asserted claims of the '063 patent are ineligible for patenting under 35 U.S.C. § 101.

**II.     SUMMARY OF ARGUMENT**

Patent law does not protect abstract ideas, even when they are claimed in a particular context. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014). Asserted claims 42, 43, and 44 of the '063 patent (the "Asserted Claims") violate this principle. The claims broadly purport to cover any and all ways of causing write-many memory cells to become write-once memory cells, and are thus abstract under the first prong of the *Alice* test for two reasons. First, the abstract concept of limiting multi-use objects to a single use is a known solution with existing applications, and applying it in the context of memory cells does not make it patent eligible. Second, the Asserted Claims are "directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (citations omitted). IMS has represented, and the Court has ruled, that the claim language requires no specific techniques to implement the invention, and instead seeks to cover the very idea of limiting multi-use memory

1

cells to one use.

Nothing else in the Asserted Claims demonstrates that they are anything but ineligible. Because the claims are entirely result-based, they do not recite any technological improvement. Nor does the '063 patent describe one. Nowhere does the patent suggest that the claimed method provides any kind of improved performance or capabilities to a memory or computing device. Rather, the only alleged advantages to the Asserted Claims that are discussed in the patent are economic, not technological.

Nor is there any inventive concept recited in the short, simple claims. The '063 patent makes clear that all of the recited hardware components are conventional devices. From start to finish, the claims recite only achieving the result of limiting a multi-use memory cell to one use. Because the Asserted Claims are impermissibly abstract and contain no inventive concept, Micron requests that the Court enter judgment that claims 42, 43, and 44 are ineligible under 35 U.S.C. § 101.

### III.    STATEMENT OF FACTS

The '063 patent relates to limiting the use of memory cells. More specifically, the patent concerns a method of converting blocks of memory from write-many blocks (*i.e.*, blocks that can have data written to them many times) to blocks that can be written to only a limited number of times. *See* '063 patent at Abstract.[1] The '063 specification explains that there is a "count" value associated with each block (referred to as "N") that controls the maximum number of times that data can be written to the block. *Id.* at 3:42-50. When the count reaches its limit, data can no longer be written to the block. *Id.* at 3:51-61. In the main embodiment, the count (N) for each block (102) is stored as a variable in an associated sideband field (106):

---

[1] The '063 patent is Exhibit D to IMS's First Amended Complaint. D.I. 11.



*Id.* at 3:42-50, Fig. 1; *see also id.* at Figs. 4a-4d (showing multiple blocks with sideband fields storing various N values).

Claim 42, which is the only asserted independent claim, claims the concept of converting write-many memory cells into write-once memory cells. It reads in full:

42. A method for creating a write-once memory device from a write-many memory device, the method comprising:

(a) providing a memory device comprising a memory array comprising a plurality of write-many memory cell [sic]; and

(b) rendering at least some of the write-many memory cells in the memory array as write-once memory cells by preventing more than one write to said at least some of the write-many memory cells.

3

During claim construction, the parties disputed the meaning of the phrase "rendering at least some of the write-many memory cells in the memory array as write-once memory cells by preventing more than one write to said at least some of the write-many memory cells." Micron argued that the phrase required using the technique of setting a maximum write count variable (*i.e.*, N) to 1. *See* D.I. 133 at 3-10, 21-23. IMS argued that the term was not limited to any particular technique, but rather covered all ways of "causing at least some of the write-many memory cells in the memory array to become memory cells that thereafter cannot be written to more than once." *Id.*, 3, 10-21. Ultimately, the Court adopted a modified version of IMS's proposed construction, construing the term to mean "causing at least some of the write-many memory cells in the memory array to become write-once memory cells." D.I. 154 at 2.

Claims 43 and 44 are also asserted, but add only minor, conventional details. Claim 43 adds that the claimed memory device must be removable from a host device. Claim 44 adds that the "rendering" step of claim 42 be performed by a "manufacturer" of the memory.

## IV.   THE '063 PATENT IS INVALID UNDER SECTION 101

### A.   The Law Of Patent Ineligibility

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry" and "an issue of law." *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (describing § 101 as "a threshold test"); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("patent-eligible subject matter is an issue of law"). For this reason, where underlying factual disputes do not preclude it, a district court may resolve patent eligibility on a motion for judgment on the pleadings. *See, e.g., Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018). In considering whether factual allegations in the complaint preclude a finding of ineligibility under Rule 12, the Court "need not accept as true allegations that contradict matters properly subject to judicial notice,"

4

such as the information recited in the patent itself. *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal quotation marks omitted).

The Supreme Court has set forth a two-part test for determining whether a patent recites ineligible subject matter under § 101. *Alice*, 573 U.S. at 217-18. At step one, the Court must determine whether the patented claims are "directed to" an abstract idea. *Id.* at 218. "The 'abstract idea' step of the [*Alice*] inquiry calls upon [the Court] to look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). In assessing abstractness, courts examine whether the claims "focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media*, 874 F.3d at 1337.

If the claim is directed to an abstract idea, the Court proceeds to step two and asks whether the claim elements, considered "both individually and 'as an ordered combination,'" recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217-18.

### B.  The Asserted Claims Are Abstract Under The First Step Of *Alice*

#### 1.  The Asserted Claims are directed to the abstract idea of limiting a multi-use object to a single use.

The '063 patent is "directed to" the abstract idea of limiting a multi-use object to a single use, and applies that concept in the particular context of memory devices. This concept is at the core of the '063 patent. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) (explaining that the "directed to" inquiry may involve determining "the problem facing the inventor and, ultimately, what the patent describes as the invention") (quotation marks and citations omitted). The '063 patent's title is "Write-Many Memory Device and *Method For*

*Limiting A Number Of Writes To The Write-Many Memory Device.*" '063 patent, (54) (emphasis added). The specification likewise describes the invention as a "method for limiting a number of writes to the write-many memory device." *Id.*, 1:50-51. Moreover, IMS's counsel explained during the Markman hearing that "the invention is directed to simply limiting the number of writes to a write-many memory cell in a memory device." Ex. A, Markman Hearing Tr. at 17:12-14.[2]

This concept of limiting a multi-use object to a single use is the clear "focus" of claim 42. *ChargePoint*, 920 F.3d at 765 (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)). Claim 42 recites only two steps, generally requiring (1) "providing" a memory with write-many memory cells and (2) "rendering" some of those cells write-once memory cells. The insignificant additional limitations in claims 43 and 44 do not change the concept at the core of the claims. In other words, the "character as a whole" of each of the Asserted Claims is about taking some multi-use memory cells and limiting them to a single use. *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).

---

[2] In deciding this Rule 12(c) motion, the Court "may take judicial notice of additional facts where appropriate." *Southmark Prime Plus, Ltd. P'ship v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991). The Court may take judicial notice of (1) facts that are generally known within the trial court's territorial jurisdiction and (2) facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201. Because the statements made by IMS's counsel during the claim construction hearing are part of the record of this case, the Court may take judicial notice of them. *See PostX Corp. v. Secure Data in Motion, Inc.*, No. C 02-04483 SI, 2004 WL 2663518, at *2 n.1 (N.D. Cal. Nov. 20, 2004) (taking judicial notice of previous filings, a hearing transcript, and an order in the pending case). The Court also should consider them because they constitute judicial admissions. *See Jackson v. Broad. Music, Inc.*, No. 04 CV 5948(TPG), 2006 WL 250524, at *7 (S.D.N.Y. Jan. 31, 2006) ("the court may take judicial notice of [factual] admissions in pleadings and other documents in the public record filed by a party . . . that contradict the party's [subsequent] factual assertions") (quotation marks and citations omitted); *Scott v. City of White Plains*, No. 10 Civ. 1887(KBF), 2012 WL 1267873, at *8 n.7 (S.D.N.Y. Apr. 10, 2012) (explaining that judicial admissions may be considered in Rule 12 motions). Even if the Court determines that it may not consider these statements in a Rule 12(c) motion, more than sufficient grounds remain for granting the motion.

Claim 42's focus is abstract for at least two reasons.  First, the idea of limiting a multi-use object to a single use is a fundamental solution that has existed long before the '063 patent claimed it in the context of memory devices.  *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) (explaining that abstract ideas include "fundamental . . . practice[s] long prevalent in our system") (citations omitted).  In the software field, for example, it has long been common practice for developers to take otherwise multi-use software programs and limit them to a single use (or other limited number of uses).  For example, software providers have "rendered" their otherwise multi-use software programs into "shareware" or "trialware" versions that are programmed to allow users to use them only a limited number of times (or for a limited time period).  *See, e.g.*, https://en.wikipedia.org/wiki/Shareware#Trialware.[3]  Similarly, video game programmers could "render" an otherwise multi-use version of Pac-Man, for example, into a version for arcade machines that would limit the program to only one use (*e.g.*, per inserted quarter).  The idea of limiting multi-use objects to a single use comes up in numerous other contexts as well, such as property and equipment rentals, where objects capable of repeated use are provided for only a single or limited number of uses.

Second, the Asserted Claims are abstract because they claim nothing more than the functional result of limiting a multi-use object (a memory cell) to a single use.  At the first step of the *Alice* analysis, courts frequently ask whether it is "focus[ed] on a specific means or method, or [is] instead directed to a result or effect that itself is the abstract idea and merely

---

[3] The practice of limiting software as described was generally known and is therefore subject to judicial notice.  *See* n.2 *supra*.  This citation is offered merely to provide context.  If the Court determines that it may not consider the cited material on a Rule 12(c) motion, the citation can be disregarded without any impact on the motion.

7

invokes generic processes and machinery." *Two-Way Media*, 874 F.3d at 1337 (citations omitted). "Indeed, the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). Such claims are impermissibly abstract because they are "drafted in such a result-oriented way that they amounted to encompassing the 'principle in the abstract' no matter how implemented." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018).

Time after time, the Federal Circuit has affirmed that claims directed to a result with no limitation as to *how* the result is achieved are abstract. In *Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016), the court confirmed that claims directed to "providing out-of-region access to regional broadcast content" were abstract because "[i]t is a broad and familiar concept concerning information distribution that is untethered to any specific or concrete way of implementing it." As the court explained, providing out-of-region content was a well-known concept in other contexts, and the claims merely recited "the function of wirelessly communicating regional broadcast content to an out-of-region recipient, not a particular way of performing that function." *Id.* In *Two-Way Media*, the Federal Circuit affirmed that a claim concerning the delivery of message packets was abstract because it merely "recite[d] a method for routing information using result-based functional language" and did "not sufficiently describe how to achieve these results in a non-abstract way." 874 F.3d at 1337. Yet again, in *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 532 (Fed. Cir. 2020), the Federal Circuit affirmed that claims directed to a data security device were abstract because "the claim does not provide any limits that curb how the apparatus performs these functions."

This Court too has recently confirmed that result-oriented claims are abstract under the

8

first step of *Alice*. In *B# On Demand LLC v. Spotify Tech. S.A.*, the Court confirmed that claims relating to distributing media according to certain rules were abstract because "[t]he claims use a wholly generic computer system to obtain functional results of limiting access to distributed media based on predetermined rules with no technical detail describing how to achieve those results." Civil Action No. 19-2077-RGA, 2020 WL 5369185, at *11 (D. Del. Sept. 8, 2020).

Here, under the Court's claim construction, it is undisputed that the Asserted Claims are directed to a result rather than any specific technique for obtaining that result. Claim 42 covers any and all ways for "causing at least some of the write many memory cells to become memory write-once memory cells." *See Am. Axle & Mfg. v. Neapco Holdings LLC*, 967 F.3d 1285, 1295 (Fed. Cir. 2019) (finding claims ineligible that recited "simply the concept of achieving [a] result, by whatever structures or steps happen to work"). Like the claims found to be impermissibly abstract in *Affinity Labs*, *Two-Way Media*, *Dropbox* and *B# On Demand*, claim 42 says nothing about <u>how</u> that result is achieved. IMS admits this, because it argued during claim construction that claim 42 recites "limiting the number of writes to a write-many memory device in the memory array to one write, again, <u>without specifying in the claim language any particular method</u> of limiting that write, the number of writes to one." Ex. A, Markman Hearing Tr., 17:16-19 (emphasis added). Further, IMS's counsel further explained that the claims recite "<u>[n]othing about specifically how</u> you limit the number of write to N number of writes," adding that "<u>there is nothing in the clear and unambiguous language that says anything about how</u> you must [limit the number of writes to one]." *Id.*, 24:7-9, 20-21 (emphasis added). The Court's construction, and IMS's admissions, both establish that claim 42 lacks "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

9

### 2. The Asserted Claims are not directed to a specific improvement to the way computers operate.

The abstractness of the Asserted Claims is further confirmed by the fact that they fail to recite any "specific improvement to the way computers operate." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). This is so for two reasons.

First, as explained above, the Asserted Claims cannot be directed to a specific improvement to the way computers operate because the claims recite nothing more than a result. As the Federal Circuit has explained, reciting "the mere *function*" of achieving the claimed result "is not a specific improvement to the way computers operate." *Univ. of Fla. Research Found., Inc. v. GE Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019) (emphasis in original and citations omitted). Rather, "[t]o claim a technological solution to a technological problem, the patent must actually *claim* the *technological solution*." *Dropbox*, 815 F. App'x at 535 (emphasis in original). The Asserted Claims fail to claim any such improvement or solution, because they instead claim the very *idea* of limiting a multi-use memory cell to only one use.

On this point, the Federal Circuit's decision in *Move, Inc. v. Real Estate All., Ltd.*, 721 F. App'x 950, 956 (Fed. Cir. 2018), is instructive. There, the court rejected the argument that a patent reciting a zooming functionality for viewing maps on a computer was directed to a technical advancement because the claim-at-issue "recite[d] nothing more than the result of the zoom" and did not recite "the technical implementation details of the zooming functionality." *Id.* The same is true of the Asserted Claims here. Because the Asserted Claims likewise fail to recite any details as to *how* one achieves the claimed result, they likewise fail to recite the type of "specific improvement to the way computers operate." *Univ. of Fla. Research Found.*, 916 F.3d at 1368. *See also B# On Demand*, 2020 WL 5369185, at *11 (finding no technical improvement where "[t]he claims use[d] a wholly generic computer system to obtain functional results" and

included "no technical detail describing how to achieve those results").

Second, even setting aside the claim's fatal failure to recite any improvement, the '063 patent's specification fails to describe any improvement to the operation of computers or computer memory. The '063 patent describes only three alleged benefits associated with the described subject matter, and none of them specifically addresses the subject matter claimed in claim 42 requiring that memory cells be limited to *one* write (as opposed to another number of writes).

The first two benefits that the '063 patent purports to provide are not technological improvements. The '063 patent first explains that the ability to limit the number of available writes to memory allows a manufacturer to better price memory by charging more for memory that allows for a greater number of writes. '063 patent, 1:8-18; 5:58-6:12. The patent next explains that by limiting the number of writes, a consumer's memory could be rendered inoperable sooner, forcing them to purchase another memory. *Id.* 6:13-27. Both of these are, at best, economic benefits, not improvements to the functionality of a computer.

The '063 patent also suggests that by limiting the number of times one can write to a memory cell, a user can be prevented from writing to the memory cell so many times that the memory cell fails. *Id.* 6:28-36. But this alleged benefit does not relate to the Asserted Claims, which limit a memory cell to *only one* write. As the '063 patent makes clear, the problems with memory cell failure arise after "repeated erase operations," not a single operation. *See id.*, 1:19-37. For this reason, the '063 patent explains that the number of writes *could* be limited to one but *should* be limited to "*preferably*, not more than (i.e. equal to or fewer than) the maximum allowable qualified writes …" *Id.*, 3:59-61 (emphasis added). The Asserted Claims, however, are not directed to a situation where the number of writes is limited to an amount anywhere near

11

the point of failure.  Because the patent never suggests (nor could it) that memory cells tend to fail after only a single write, it makes no sense to view the Asserted Claims as providing for an improved way to avoid memory cell failure from excessive use.  This alleged benefit is directed to embodiments reflected in other, unasserted claims.

In any event, as anyone who has shaved with a fresh disposable razor knows, the idea that one can avoid wear and tear by using something only once is itself an abstract idea.  Avoiding wear and tear is a known advantage of limiting multi-use objects to a single use, and claim 42 simply migrates that solution to the memory cell context.  *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) (explaining that benefits do not reflect technological improvements when they "are benefits that flow from performing an abstract idea in conjunction with a well-known [existing context]").  Because limiting multi-use objects to a single use is a known way to avoid wear and tear *in any context*, applying that abstract idea to achieve its associated benefit in *a particular context* does not yield a patentable, technological improvement.  *See TriPlay, Inc. v. WhatsApp Inc.*, No. 13-1703-LPS-CJB, 2018 WL 1479027, at *9 (D. Del. Mar. 27, 2018) (ruling that a claimed use of templates did not provide a technological improvement where the provided benefit was simply "the fundamental benefit of templates in *any* context") (emphasis in original).  Instead, it is an example of improperly applying an abstract idea in a particular technological environment.  *See Intellectual Ventures I*, 792 F.3d at 1366 ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment …").  *See also Parker v. Flook*, 437 U.S. 584, 595 (1978) (explaining that use of a nonpatentable solution renders claims ineligible "even if the solution is for a specific purpose").

    **C.**    **The Asserted Claims Lack An Inventive Concept.**

Claim 42 lacks an inventive concept "sufficient to ensure that the patent in practice

amounts to significantly more than" an attempt to patent the abstract idea itself. Examining the claim's limitations both individually and as an ordered combination makes clear that claim 42 simply instructs one to apply the abstract idea of limiting multi-use objects to a single use in the context of memory cells.

Looking first at the limitations individually, the various physical components recited in claim 42 are nothing more than "generic computer components configured to implement the [abstract] idea," as *Alice* forbids. *Alice*, 573 U.S. at 226. Claim 42 recites memory devices comprising memory arrays that include memory cells, but this is just the basic description of conventional computer memory. *See* '063 patent, 2:32-36, 38-42 (discussing memory devices with memory arrays and prior art memory array devices). Indeed, the named inventors of '063 patent did not purport to have invented any new type of memory cell or memory device. Rather, the '063 patent explains that its alleged invention is achieved by applying particular programming to existing, generic memory devices, and further specifies that "[a]ny suitable type of write-many memory device can be used." *Id.*, 2:28-29. The patent likewise acknowledges that write-once memory cells were well-known. *See id.*, 3:56-61 (using the existing acronym "WORM," which stands for "Write Once Read Many," to refer to existing devices with write-once memory cells). These conventional devices serve as little more than a "particular field of use or technological environment" within which to apply the abstract idea and do not provide an inventive concept. *Intellectual Ventures I LLC*, 792 F.3d at 1366.

Examining claim 42's limitations as "an ordered combination" likewise provides no inventive concept. Claim 42 is short. The first step of claim 42 sets forth the generic device described above, and the second step just directs one to apply the abstract idea. The only "combination" it recites is the combination of (1) the abstract idea of limiting multi-use objects

13

to a single use combined with (2) the context of memory cells. But "[i]t has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech*, 899 F.3d at 1290.

Further, there is nothing in the patent which suggests that making this combination was somehow unconventional or inventive. As the Court acknowledged, the parties agree that claim 42 "does not recite something technologically difficult" and one of ordinary skill in the art "would not have had any issue limiting the number of writes to a memory cell." D.I. 149, at 11. Even at its most specific, the patent simply invokes basic and conventional programming functions like counting writes and setting and defining variables, both of which IMS has admitted were conventional and well-known programming techniques. Ex. A, Markman Hearing Tr. at 33:19-20 ("Setting N to 1, setting a variable to one, that was known in other contexts."), 34:4-7 ("Certainly people knew how to understand how many – to know how many times a memory cell had been written to. There was nothing novel about that."). Accordingly, the subject matter described in the specification (but *not* recited in the claims) relates only to "well-understood, routine, conventional activities previously known to the industry." *Alice*, 573 U.S. 208, 225 (internal quotations and modifications omitted). Combining these steps with the memory context, "when viewed as a whole, add[s] nothing significant beyond the sum of their parts taken separately." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 80 (2012). At best, claim 42 simply requires using basic and conventional programming to achieve the abstract result of limiting a multi-use memory cell to a single use, and thus includes nothing that can save the claim from ineligibility.

The two asserted dependent claims fail to add any inventive concept to claim 42.

14

Dependent claim 43 simply requires that the memory device be removable. But the idea of removable memory devices, such as floppy disks, CDs, DVDs, videogame cartridges, and USB thumb drives, was conventional as of the '063 patent's 2001 priority date and not even arguably inventive. *See* '063 patent, 6:24-27 (referring to existing Smart Card devices). Claim 44 only requires that the manufacturer be the actor that sets the claimed write limit. The '063 patent and the parties' stipulated construction, however, defines "manufacturer" as "any party who handles the memory device before it is sold or distributed to an end user, including a party involved in the manufacturing, assembly, packaging, sale or distribution of the memory device." D.I. 154 at 1; *see also* '063 patent at 3:61-67 (reciting similar definition). In other words, rather than somehow transforming the abstract idea, this limitation only specifies *who performs* the abstract method, and allows virtually anyone to do so among the broad group of actors that would conventionally be responsible for programming memory devices. These dependent claims in no way "transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (citations and internal quotations marks omitted).

### V.   CONCLUSION

For the foregoing reasons, the Asserted Claims of the '063 patent are ineligible for patenting under 35 U.S.C. § 101. Micron respectfully requests that the Court enter judgment on the pleadings with respect to Count IV ('063 patent claim) of IMS's First Amended Complaint forthwith.

*/s/ Frederick L. Cottrell, III*

15

| | |
|---|---|
| OF COUNSEL:<br><br>Jared Bobrow (*Pro Hac Vice*)<br>Jason Lang (*Pro Hac Vice*)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>1000 Marsh Road<br>Menlo Park, CA  94025-1015<br>Tel:    +1 650 614 7400<br>Fax:   +1 650 614 7401<br>jbobrow@orrick.com<br>jlang@orrick.com<br><br>DATED: DECEMBER 23, 2020 | Frederick L. Cottrell, III<br>Travis Steven Hunter<br>Tyler E. Cragg<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE  19801<br>Tel:  + 1-302-658-6541<br>cottrell@rlf.com<br>hunter@rlf.com<br>cragg@rlf.com |

16