# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INNOVATIVE MEMORY SYSTEMS, INC. | ) | |
| | ) | |
| | ) | Civil Action No. 14-1480-RGA-JLH |
| Plaintiff, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| MICRON TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF IMS'S OPPOSITION TO DEFENDANT MICRON'S MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDINGS ..................................................1

II.     SUMMARY OF ARGUMENT....................................................................................1

III.    ARGUMENT ..............................................................................................................3

      A.    Micron's Non-Infringement Theory of the '063 Patent Is Based on an
Attempt to Add an Extraneous Limitation to the Claims.......................................3

           1.    Micron infringes when it renders the memory cells in the OTP area
as write-once memory cells, regardless of "test mode"............................4

           2.    Neither the claim language nor the specification supports adding a
one-time permanent rendering limitation into the claims...........................6

      B.    Eiichi Does Not Anticipate or Render Obvious the Claims of the '063
Patent....................................................................................................................8

           1.    The preamble of the asserted claims is limiting.........................................8

           2.    Eiichi does not disclose fabricating a write-many memory device
from which a write-once memory device is created ..................................10

           3.    Eiichi does not anticipate or render obvious claim 43 ..............................13

      C.    The Asserted Claims of the '063 Patent Are Patent-Eligible ................................14

           1.    The asserted claims are directed to a particular technique for
creating a write-once memory device .......................................................15

           2.    The asserted claims provide an inventive concept.....................................20

      D.    Micron's Theory of Non-Infringement of the '498 Patent Is Based on an
Improper Claim Construction of "Assigned Blocks" ...........................................21

      E.    There Is Sufficient Evidence of Record to Demonstrate that IMS Has
Complied with Any Obligation to Mark under 35 U.S.C. § 287 .........................23

      F.    There Is Sufficient Evidence to Create a Genuine Dispute as to Whether
Micron's Alleged "Foreign Sales" Are Infringing Sales Under § 271..................24

      G.    There Is Sufficient Record Evidence to Support Micron's Liability For
Infringing Acts of Its Subsidiaries .......................................................................25

IV.    CONCLUSION..........................................................................................................27

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affinity Labs of Texas v. DIRECTV LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)..................................................................................19

*Allergan USA, Inc. v. Aurobindo Pharma Ltd.*,
    Civil Action No. 19-cv-1727-RGA, 2021 WL 84368 (D. Del. Jan. 11, 2021).........................8

*Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017)..................................................................................24

*B# on Demand LLC v. Spotify Tech. S.A.*,
    484 F.Supp.3d 188 (D. Del. 2020)..............................................................................19

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*,
    687 F.3d 1266 (Fed. Cir. 2012)..................................................................................20

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)..................................................................................20

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)..................................................................................20

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) (en banc), *aff'd on other grounds*, *Bilski*, 561
    U.S. 593 ..............................................................................................................20

*Boehringer Ingelheim Ventmedica, Inc. v. Schering-Plough Corp.*,
    320 F.3d 1339 (Fed. Cir. 2003)..............................................................................8, 12

*Brit. Telecom. PLC v. IAC/InteractiveCorp.*,
    356 F. Supp. 3d 405 (D. Del. 2019)............................................................................25

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
    25 F.4th 976 (Fed. Cir. 2022) ..................................................................................24

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002)....................................................................................8

*Core Wireless Licensing SARL v. Apple Inc.*,
    899 F.3d 1356 (Fed Cir. 2018)....................................................................................6

*Dropbox, Inc. v. Synchronoss Technologies., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ............................................................................19

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*,
   8 F.4th 1331 (Fed. Cir. 2021) ........................................................................................9, 10

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016).....................................................................................14, 18

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018).............................................................................................15

*Free Stream Media Corp. v. Alphonso Inc.*,
   996 F.3d 1355 (Fed. Cir. 2021).............................................................................................19

*Gov't Emps. Ret. Sys. of Virgin Islands v. Gov't of Virgin Islands*,
   995 F.3d 66 (3d Cir. 2021)....................................................................................................27

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2016).............................................................................................19

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
   942 F.3d 1143 (Fed. Cir. 2019).............................................................................................19

*Limestone Memory Systems LLC v. Micron Technology, Inc.*,
   Case No: SA CV 15-0278-DOC, 2019 WL 8690217 (C.D. Cal. Dec. 26, 2019)...................27

*LiTL LLC v. Lenovo (U.S.) Inc.*,
   No. CV 20-689-RGA, 2022 WL 610739 (D. Del. Jan. 21, 2022) ..........................................18

*MEMS Tech. Berhad v. Int'l Trade Comm'n*,
   447 F. App'x 142 (Fed. Cir. 2011) .......................................................................................12

*Network-1 Techs., Inc. v. Hewlett-Packard Co.*,
   981 F.3d 1015 (Fed. Cir. 2020)...............................................................................................8

*Peloton Interactive, Inc. v. Echelon Fitness, LLC*,
   Civil Action No. 19-cv-1903-RGA, 2020 WL 3640064 (D. Del. July 6, 2020) ...................20

*Sling TV, L.L.C. v. Uniloc 2017 LLC*,
   No. 2021-1651, 2022 WL 306468 (Fed. Cir. Feb. 2, 2022) ...................................................7

*Storage Tech. Corp. v. Cisco Sys., Inc.*,
   329 F.3d 823 (Fed. Cir. 2003).................................................................................................8

*StrikeForce Techs., Inc. v. PhoneFactor, Inc.*,
   No. CV 13-490-RGA-MPT, 2013 WL 6002850 (D. Del. Nov. 13, 2013) .............................26

*SynKloud Techs., LLC v. HP Inc.*,
   Civil Action No. 19-1360-RGA, 2020 WL 5798725 (D. Del. Sept. 29, 2020)......................16

*Tarkus Imaging, Inc. v. Adobe Sys., Inc.*,
    Civ. No. 10–63–LPS., 2011 WL 1557930 (D. Del. Apr. 21, 2011) .......................................25

*Two-Way Media Ltd. v. Comcast Cable Communications, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)............................................................................................19

*University of Florida Research Foundation, Inc. v. GE Co.*,
    916 F.3d 1363 (Fed. Cir. 2019)............................................................................................18

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017)............................................................................................18

*Wildcat Licensing WI LLC v. Faurecia S.A.*,
    C.A. No. 19-839-MNJLH, C.A. No. 19-846-MN-JLH, 2019 WL 7067090 (D.
    Del. Dec. 23, 2019) .......................................................................................................15, 16

*Williams v. Borough of West Chester*,
    891 F.2d 458 (3d Cir. 1989)................................................................................................24

*z4 Techs., Inc. v. Microsoft Corp.*,
    507 F.3d 1340 (Fed. Cir. 2007)..............................................................................................6

**Statutes**

35 U.S.C. § 101 ...............................................................................................2, 14, 15, 20

35 U.S.C. § 287 .......................................................................................................23, 24

## I.    NATURE AND STAGE OF THE PROCEEDINGS

In this action, Plaintiff Innovative Memory Systems Inc. ("IMS") accuses Defendant Micron Technology, Inc. ("Micron") of infringing U.S. Patent Nos. 7,000,063 ("the '063 patent" and 6,901,498 ("the '498 patent"). Micron has moved for summary judgment on various liability and damages issues, and IMS opposes Micron's motion on all issues.

## II.    SUMMARY OF ARGUMENT

Micron's motion for summary judgment of non-infringement of the '063 patent is based on an improper attempt to add a claim limitation to the asserted method of manufacturing claims. Micron contends that the memory cells in the One-Time Programmable (OTP) area of its devices are never really write-once, ████████████████████████████████████ ████████████ Micron concedes, however, that test mode is only one mode of operation of its devices, and that OTP mode is another mode. In OTP mode, the write-many memory cells have been rendered write-once as recited in the claims. This is all that is required for infringement. That the memory cells can then be ████████████████████████████████, such that they can again ████████████████████████████████████ ████████████████████████, does not defeat infringement. The asserted method claims do not require a one-time, permanent rendering of write-many memory cells as write-once memory cells.

Micron's motion for summary judgement of invalidity of the '063 patent is equally unavailing. The asserted claims require that a write-once memory device be created from a memory device that is manufactured as a write-many memory device. Eiichi is manufactured as a write-once many memory device, and does not disclose creating a write-once memory device from a write-many memory device as required by the claims. Nor does Micron or its expert

1

articulate any reasoning why it would have been obvious to implement Eiichi's microcomputer, intended to be embedded in a host device and to control the operations of that host device, on a separate removable memory card.

Micron's further attempt to invalidate the asserted claims of the '063 patent based on 35 U.S.C. § 101. The asserted claims, however, are not, as Micron contends, directed to a result without reciting a technique for obtaining that result. Rather, they recite a specific and improved method for creating a write-once memory device, by transforming a write-many many memory device to which data can be written an unlimited number of times into a device in which at least a portion of the write-many memory cells can be written only once. The claims do not merely recite the creation of a write-once memory device. The claims recite the specific technique for creating that write-once memory device, in a way that provides distinct advantages over simply manufacturing a write-once memory device in the first instance. It is clear from the claim language, as further supported by the specification, that the asserted claims are not directed to an abstract idea.

As with the '063 patent, Micron's motion for summary judgment of non-infringement of the '498 patent is based on an improper attempt to add a claim limitation to the asserted claims. The claims do not require, as Micron asserts, that at all times during the process in which "assigned blocks from one logical zone are shifted to another logical zone" the "assigned blocks" have logical addresses assigned to them. Micron does not dispute the evidence presented by IMS showing that in the accused devices, blocks that had ███████████████████████████ ████████████████████████████████████████████████████ ████████████████. A block being shifted from one logical zone to another logical zone that is ████████████████████████████████████████████████████

█████████████████████████████████████████████ is an "assigned block" within the meaning of the claims.

Micron's motion for partial summary judgment barring pre-suit damages for failure to mark also fails. The very evidence offered by Micron to support its motion is enough to satisfy IMS's burden at the summary judgment stage to demonstrate a genuine dispute of material fact as to whether accused products embody the limitations of the asserted claims. There is also sufficient evidence of record to create a genuine dispute of material fact as to whether all sales of Micron's accused products are tied to infringing acts committed in the U.S., including as to whether the sales transactions are deemed to be domestic or extraterritorial in nature.

Finally, Micron cannot sustain its burden of showing that there is no genuine issue of material fact as to whether Micron bears liability for the infringing acts of its wholly owned and controlled subsidiaries. There is ample evidence of record to demonstrate that Micron exercises direct dominion and control over its subsidiaries and acts in concerted strategy with those subsidiaries in connection with the sales of its products.

## III.   ARGUMENT

### A.  Micron's Non-Infringement Theory of the '063 Patent Is Based on an Attempt to Add an Extraneous Limitation to the Claims

Claim 42 of the '063 patent requires creating a write-once memory device from a memory device that is fabricated as a write-many memory device. This method claim includes the limitation "rendering at least some of the write-many memory cells in the memory array as write-once memory cells, by preventing more than one write to said at least some of the write-many memory cells." Ex. 1 to Lang Decl., 10:28-31. This Court has construed the "rendering" limitation to mean "causing at least some of the write-many memory cells in the memory array to become write-once memory cells". (D.I. 149, at 7). Micron would limit this "rendering"

limitation to a one-time, permanent rendering, such that even if write-many memory cells have

been configured as memory cells that cannot be written more than once in OTP mode, they are

are not write-once memory cells within the meaning of the claim if they can be re-configured as

write-many memory cells in test mode. Micron attempts to import a limitation that is nowhere

found in the claim language itself or in this Court's construction of this claim limitation.

### 1. Micron infringes when it renders the memory cells in the OTP area as write-once memory cells, regardless of "test mode"

There is no dispute regarding the NAND Flash memory devices manufactured by Micron

and the relevant operation of the o[1]ne-time programmable ("OTP") memory cells in those

devices. IMS's expert, Dr. Wolfe, explains that Micron's NAND Flash devices are fabricated as

write-many memory devices, where all memory cells in the memory array are fabricated as

write-many memory cells. Wolfe Decl. ¶¶56, 62, 95; Ex. A 153:21-24, 161:10-15. Micron's

expert, Mr. McAlexander, does not contest this. *See* Ex. B 115:22-116:2. It is further uncontested

that, as Dr. Wolfe testifies and as confirmed by Micron's own 30(b)(6) witness, ████████

███████████████████████████████████████████████████████████████████████████

████ Ex. A 169:2-9; Wolfe Decl. ¶113; Ex. D ¶179; Ex. C 132:16-23, 136:7-16, 140:5-141:14.

███████████████████████████████████████████████████████████████████████████

███████████████████, the specifics of which Dr. Wolfe describes based on Micron's

own documents, including Verilog source code, as well as the testimony of its 30(b)(6) witness.

Wolfe Decl. ¶¶56, 62-96.

---

[1] "Wolfe Decl." and "Ex. _" as cited herein refer to the Declaration of Andrew Wolfe, Ph.D., and exhibits to the Declaration of Edward C. Flynn, Esq., respectively, in Support of IMS's Opposition to Micron's Motion for Summary Judgment.

As established by Micron's documents and testimony of its designated corporate witness, memory cells ████████████████████████████████████████████ ████████████████████████████████████ described in Micron's data sheets. Wolfe Decl. ¶¶69-78; Ex. C 133:3-12. In this test mode, ███████████████████████ ██████████████████████████████████ Wolfe Decl. ¶¶69, 71; Ex. D ¶208. ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████, those cells can be written once, but cannot be erased in order to be re-programmed. Wolfe Decl. ¶¶56, 73, 77-78; Ex. C 88:4-10; Ex. F at MIMS00035442. As such, ███████████████████, the memory cells in the OTP area can be written once, but cannot be erased, i.e., they have been rendered as write-once memory cells. Wolfe Decl. ¶¶56, 95.

The dispute raised by Micron's motion for summary judgment is simply this: █████████ ████████████████████████████████, in which the OTP memory cells are re-configured from write-once back to write-many so that they can be tested, prevents those cells from being write-once memory cells within the meaning of the claims. At Dr. Wolfe's deposition, counsel for Micron attempted repeatedly for over 20 pages of deposition testimony to get Dr. Wolfe to say that the OTP memory cells are never write-once memory cells ██████████████████ ████████████████████████████████████. Ex. A 149:20-171:12. Dr. Wolfe steadfastly – and correctly – maintained that the fact that OTP memory cells that have already been rendered as write-once memory cells can then be ████████████████ ██████████████████████ does not change the infringement analysis. Once the write-many memory cells of the accused device are configured in OTP mode as write-once

memory cells in a way that meets all the limitations of the claims, ██████████████

███████████████████████████████████████████ *Id*. 151:6-17,

154:2-20, 157:22-158:24. ████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

*Id*. 160:7-15. *See also id*., 167:12-18, 169:2-16, 170:13-25. █████████████████

███████████████████ *See* D.I. 289 at 11.

Configuring the device in OTP mode so as to meet all the limitations of the asserted

method claims results in infringement of those claims. The fact that the device can ██████████

███████████████████████████████████████ does not alter the conclusion that the

claim has already been infringed. Even in the case of product claims, "infringement is not

avoided merely because a non-infringing mode of operation is possible." *Core Wireless*

*Licensing SARL v. Apple Inc.*, 899 F.3d 1356, 1363 (Fed Cir. 2018); *see also z4 Techs., Inc. v.*

*Microsoft Corp.*, 507 F.3d 1340, 1350 (Fed. Cir. 2007). Even more so in the case of a method of

manufacturing claim, when all the limitations of the claim have been practiced, infringement

cannot be avoided merely because the device may have different operation modes.

### 2. Neither the claim language nor the specification supports adding a one-time permanent rendering limitation into the claims

Micron's attempt to add a limitation that would require a one-time, permanent rendering

of write-many memory cells as write-once memory cells is simply not supported by either the

claim language as construed by this Court or the specification. In fact, adding such a limitation

would be contrary to the essence of the '063 invention as described in the specification. Indeed,

it would exclude the specification's preferred embodiment.

The '063 patent makes clear that the invention is directed to memory devices manufactured as write-many memory devices, and limiting the number of writes to those write-many memory devices. *See, e.g.,* Ex. 1 to Lang Decl. 1:1-40, and FIG. 2. The preferred embodiment described in the specification uses data stored in sideband fields as a method of limiting the number of writes to a write-many memory device, including limiting the number of writes to a single write. As described in the preferred embodiment, either the manufacturer or user can set a variable N stored in the sideband fields to a certain value, representing the number of allowable writes. The specification describes specifically that N can be set to 1 so as to create a write-once memory device from the device manufactured as write-many. *Id.* 3:27-61. As further described, however, even if the user has reached the maximum number of writes, the user is provided with the ability to change N to a different value so as to override the write-once protection. *Id.* 4:59-5:8. As the specification describes, therefore, the preferred embodiment allows the memory cells to operate in different modes, such that by allowing for the ability to change the value of the N variable, the memory cells manufactured as write-many may be configured to operate as write-once, then re-configured back to operate as write-many.

As was the case when this Court rejected Micron's attempt to restrict "rendering" to the use of a "maximum write count" described in exemplary embodiments in the specification, D.I. 149, at 10-11, even more so here should the Court reject Micron's attempt to restrict "rendering" to a one-time, permanent rendering. As this Court noted, "'[a]bsent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language.'" *Id.* (citation omitted). In addition to nowhere being found in the claim language itself, reading such a restriction into the claims would further exclude the preferred embodiment described in the '063 specification. *See Sling TV, L.L.C. v. Uniloc 2017 LLC*, No. 2021-1651,

2022 WL 306468, at *3 (Fed. Cir. Feb. 2, 2022) ("A claim construction that 'excludes the preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support.'") (citations omitted); s*ee also Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1024 (Fed. Cir. 2020) (reversing the district court's construction of "power source" as excluding AC power when the preferred embodiment described in the specification used AC power). Indeed, this Court has specifically rejected such constructions that exclude the preferred embodiment.  *See Allergan USA, Inc. v. Aurobindo Pharma Ltd.,* Civil Action No. 19-cv-1727-RGA, 2021 WL 84368, at *3 (D. Del. Jan. 11, 2021). Micron's attempt to import such a limitation is improper.[2]

### B.  Eiichi Does Not Anticipate or Render Obvious the Claims of the '063 Patent

#### 1.  The preamble of the asserted claims is limiting

Determining whether language of a preamble is limiting requires review of the entire patent to understand the claim as a whole and the invention as described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003); *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). Preamble language "will limit the claim if it recites not merely a context in which the invention may be used, but the essence of the invention without which performance of the recited steps is nothing but an academic exercise." *Boehringer Ingelheim Ventmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1345 (Fed. Cir.

---

[2] ████████████████████████████████████████████

2003); *see also Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1342 (Fed. Cir. 2021) (preamble limiting where it is the only portion of the claim to recite the "essence of the invention").

The preamble of the asserted claims is the only portion of claim 42 that recites the purpose of the invention of that claim: creating a write-once memory device *from* a write-many memory device. Indeed, the entirety of the patent makes clear that all of the claims of the '063 patent start with a memory device that is fabricated as a write-many memory device. The very title of the patent is "WRITE-MANY MEMORY DEVICE AND METHOD FOR LIMITING A NUMBER OF WRITES TO THE WRITE-MANY MEMORY DEVICE." Ex. 1 to Lang Decl. Title. The Background begins by referring to "[u]sers of write-many memory devices," stating that "[c]urrently, there are no write-many memory devices that control the number of allowable writes . . . to the memory device." *Id*. 1:8-13. It then discusses the difficulty in segmenting the write-many memory device market, and further discusses concerns where blocks of memory in write-many devices can wear out because of repeated writes and erasures. *Id*. 1:14-24. It concludes with stating a need that corresponds exactly to the title of the patent. *Id*. 1:38-40.

The remainder of the specification discloses embodiments that limit the number of writes to existing write-many memory devices. As discussed above, the essence of the '063 invention is converting a traditional write-many memory device into a write-once memory device. As such, the entirety of the '063 patent makes clear that the invention is not directed to a memory device that is fabricated as a write-once memory device in the first instance, but rather, to creating a write-once memory device *from* a memory device that is fabricated as a write-many memory device. The preamble of the claim, therefore, as is frequently the case in method claims where what the method does is usually recited in the preamble, is "not merely statements of effect but

rather statements of the intentional purpose for which the methods must be performed." *Eli Lilly*, 8 F.4th at 1342; *see also id.* at 1341 ("growing" and "isolating" were relevant claim limitations because they "[were] not merely circumstances in which the method may be useful, but instead [we]re the *raison d'être* of the claimed method itself.").

Neither Micron nor its expert disputes that the preamble is limiting in this case. Micron only states (albeit incorrectly) that "if the preamble is limiting, Eiichi discloses '[a] method for creating a write-once memory device from a write-many memory device.'" D.I. 289 at 15. Indeed, it was Micron who originally proposed a claim construction for "write-many memory device," which only appears in the preamble, and it was Micron's proposed construction that was adopted by this Court.  Ex. H at 3; D.I. 154. Moreover, Mr. McAlexander has conceded that the claim requires *fabricating* write-many memory cells. In mapping the preamble of claim 42 to Eiichi, Mr. McAlexander expressly states that "Eiichi discloses *fabricating* an array of *write-many* memory cells on a wafer ('*write-many memory device*'). . . ." Ex. A to Lang Decl. ¶50 (emphases added). As discussed below, Mr. McAlexander is wrong – Eiichi's memory cells are fabricated as write-once – but he at least acknowledges that a write-many memory device for purposes of the claim requires the fabrication of write-many memory cells in the first instance.

### 2. Eiichi does not disclose fabricating a write-many memory device from which a write-once memory device is created

Dr. Wolfe testifies that Eiichi discloses manufacturing a write-once memory device, not a write-many memory device. Subsequent to manufacture, the write-once control circuitry of the Eiichi device can be augmented to operate in a write-many configuration during testing when the memory is connected to a tester that provides an external test mode signal. Once the test mode signal is removed, the circuit resorts back to the write-once configuration in which it was manufactured. Eiichi, therefore, does not disclose creating a write-once memory device from a

write-many memory device as required by the claims. Wolfe Decl. ¶¶105-106, 112; Ex. 10 to Lang Decl. ¶¶[0013], [0014], [0021], [0064], [0065].

In its brief in support of its motion, Micron does not dispute that Eiichi is fabricated as a write-once memory device. In fact, Micron expressly states that "there is no relevant factual dispute about how Eiichi operates," quoting Dr. Wolfe's description of Eiichi:  "[Eiichi's] memory is *manufactured in an OTP configuration* until it is connected, *after the device is fabricated*, to a tester or similar device and an external test mode signal is provided by the tester." D.I. 289 at 14-15, quoting Ex. 8 to Lang Decl. ¶193 (emphases added). Micron agrees, therefore, that Eiichi's memory cells are fabricated as write-once. As Dr. Wolfe explains, providing an external test mode signal to the memory results in a transient write-many state that "*has been created from a write-once device*, until the signal is removed, at which point the circuit operation resorts back to write-once." Wolfe Decl. ¶106 (emphasis added); *see also* Ex. 10 to Lang Decl. Abstract, ¶¶[0013], [0014], [0021], [0064], [0065]. Rather than creating a write-once memory device from a write-many memory device as the claims require, Eiichi discloses creating a write-once device in the first instance. Eiichi's device "can be externally adapted to become capable of erasure and rewriting only when placed in test mode *subsequent to the creation of the device*," and then returned to its fabricated write-once state after testing is completed. Wolfe Decl. ¶112, citing Ex. 10 to Lang Decl. ¶¶[0001], [0011]-[0012], [0015]-[0017], [0021], [0025], [0046], [0048], [0050], [0059]-[0061], [0064], [0068], claim 1 (emphasis added).

Micron nevertheless argues that it is irrelevant that Eiichi starts with fabricating a write-once memory device rather than a write-many memory device, because claim 42 is a comprising claim. D.I. 289 at 16. According to Micron, the fact that "Eiichi discloses an additional, unrecited

step of first creating a write-once memory device is legally irrelevant." *Id*. Clearly, Micron focuses only on the steps of the claim, but wholly ignores the limitation of the preamble that requires that the first-created memory device be a write-many memory device. Far from being "legally irrelevant," the limitation that requires first creating a write-once memory device is what results in Eiichi not meeting all the limitations of the claim.

This conclusion is only further supported by comparing Eiichi's objective with the essential purpose of the '063 invention, as recited in the preamble and supported by the entirety of the '063 specification. Eiichi explains the disadvantages, and lists numerous problems, associated with a memory that is write-many for use in a microcomputer that incorporates an on-chip flash memory.  Wolfe Decl. ¶¶107-109; Ex. 10 to Lang Decl. ¶¶[0005]-[0007]. For example, when it is intended to use an OTP memory in a microcomputer, it would be wasteful and would add unnecessary size to the device to include erasure control and data-line disturbance circuitry necessary for a write-many memory. *Id.* It is Eiichi's objective, therefore, to reduce the size of the chip by opting for a simpler and cheaper write-once memory device over the alternative write-many memory device, and the Eiichi invention allows the write-once memory device to be externally adapted for erasing and rewriting solely during testing of the device.  Wolfe Decl. ¶112; Ex. 10 to Lang Decl. ¶[0008].

Eiichi's objective, therefore, is polar opposite to the essence of claim 42's invention. Where Eiichi desires to dispense with a traditional write-many memory device, claim 42 embraces the flexibility of using write-many memory devices from which a write-once memory device can be created. Without the very purpose of the '063 invention as recited in the preamble, the performance of the recited steps would be "nothing more than an academic exercise." *Boehringer*, 320 F.3d at 1345. *See also MEMS Tech. Berhad v. Int'l Trade Comm'n*, 447 F. App'x

142, 153–54 (Fed. Cir. 2011) (reading the preamble as limiting because it stated "the essence of

the invention" and "standing alone, the bodies of [the claims] d[id] not require" the important

characteristic of the invention recited in the preamble). Accordingly, Eiichi fails to invalidate

claims 42-44.

### 3.   Eiichi does not anticipate or render obvious claim 43

Initially, Micron argues that Eiichi anticipates and renders obvious claim 43. Its expert,

however, only offers support for Micron's obviousness assertion. Mr. McAlexander concedes

that "Eiichi does not expressly disclose using its device as 'modular memory device that is

removably couplable with a host device,'" but that it would have been obvious. Ex. A to Lang

Decl., ¶60. Without proper support, therefore, Micron's anticipation argument must fail.

Mr. McAlexander's obviousness opinion, based solely on his assertion that memory cards

were known (*id*. ¶¶62-68), fares no better.[3]  Eiichi discloses a single chip microcomputer that

includes a CPU, OTP flash memory and I/O circuitry. Ex. 10 to Lang Decl. [Abstract], [claim 1]

¶¶[0001], [0005], [0015], [0023], [0066], [FIG. 1]. Eiichi describes that the microcomputer is

sealed into a suitable package that is then embedded in a separate host device (such as a digital

camera, cellular telephone, PDA or general purpose computer as referenced by the '063 patent

and Mr. McAlexander). *Id*. ¶[0066], [FIG. 4]. The CPU uses its embedded on-chip OTP flash

memory to control data processing for the host device in which it is embedded.  *Id*. ¶[0015],

[FIGS. 1-3]. The microcomputer, therefore, with its CPU and OTP flash memory, is the "brains"

of the host device in which it is embedded, and controls the operations of that host device.

---

[3] While IMS does not agree that this claim term is limited to memory cards, IMS's
present opposition is limited to Mr. McAlexander's obviousness testimony in support of
Micron's motion, which is based on a memory card.

Memory cards, on the other hand, as acknowledged by Mr. McAlexander, are used to exchange data with the host and have special electrical connectors for doing so. *See* Ex. A to Lang Decl. ¶64. In other words, they are peripheral to the host, not part of the host, and are intended to work with the host. Mr. McAlexander fails to articulate any reasoning as to why it would have been obvious to remove from the host device the microcomputer that controls the host device's operations, and without which the host device cannot operate, and to put the microcomputer's circuitry on a separate, removable memory card. Mr. McAlexander's wholly conclusory opinion is classic hindsight reconstruction intended solely to invalidate the claims, and based solely on the fact that memory cards were known. Such evidence is insufficient to entitle Micron to summary judgement of invalidity based on obviousness.

### C.  The Asserted Claims of the '063 Patent Are Patent-Eligible

Following its prior motion for judgment on the pleadings in which it argued that the asserted claims of the '063 patent are invalid under 35 U.S.C. § 101 (D.I. 167), Micron now moves for summary judgment of invalidity on the same grounds, arguing that the asserted claims are "essentially result-focused, functional" claims.  D.I. 289 at 5.[4] Just as it did in its prior motion, Micron continues in the present motion to distort and oversimplify the claims, describing them "at such a high level of abstraction and untethered from the language of the claims" in such a way that it "all but ensures that the exceptions to § 101 swallow the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016), citing *Alice Corp. Pty. Ltd. v. CLS Bank*

---

[4] Micron appears to have backed off how it characterized the claims as abstract in moving for judgment on the pleadings. There, Micron characterized the claims as directed merely to "limiting a multi-use object to a single use," and as claiming "nothing more than the functional result of limiting a multi-use object (a memory cell) to a single use." D.I. 168 at 5, 7. Micron even likened the claims to limiting the use of a Pac-Man video arcade game to a single use. *Id*. at 7.

*Int'l*, 573 U.S. 208, 216 (2014). This Court has denied motions under Section 101 in which defendants attempted to do exactly what Micron attempts to do here. *See Wildcat Licensing WI LLC v. Faurecia S.A.*, C.A. No. 19-839-MNJLH, C.A. No. 19-846-MN-JLH, 2019 WL 7067090, at \*5 (D. Del. Dec. 23, 2019) (denying motion to dismiss under Section 101 where defendant oversimplified the claims and did not adequately characterize the idea to which the claims were directed, and where the purported abstract idea failed to satisfactorily capture the substance of the claims"), *report and recommendation adopted*, 2020 WL 95481 (D. Del. Jan. 8, 2020).

## 1. The asserted claims are directed to a particular technique for creating a write-once memory device

As set forth above, the essence of the invention of the asserted claims, as recited in claim 42's preamble, is creating a write-once memory device *from* an existing write-many memory device. The claims are not, contrary to Micron's assertion, merely directed to a result with no limitation as to how to achieve that result. *See Id*. at 5, 6. They do not simply recite manufacturing or creating a write-once memory device. Rather, they recite a specific and improved method for transforming a write-many memory device to which data can be written an unlimited number of times into a memory device to which data can only be written once. The claims recite that the transformation begins with taking an existing write-many memory device comprised of a plurality of write-many memory cells, and then causing at least some of those write-many memory cells to become write-once memory cells. In other words, the claims are not simply directed to the result of a write-once memory device. Rather, they are directed to a specific way of creating that write-once memory device.[5]

---

[5] Micron seems to imply that the fact that claim 42 recites only two steps supports that it is directed to a mere result. *See* D.I. 289 at 4. As the Federal Circuit has made clear, however, the number of steps is irrelevant to a Section 101 inquiry. *See Finjan, Inc. v. Blue Coat Systems, Inc.*,

Micron attempts to rely on this Court's claim construction to support its assertion that the asserted claims are directed only to a result rather than a specific technique for obtaining the result.  D.I. 289 at 6. Micron conflates the result and the means of achieving that result as recited in the claims. As construed by this Court, the "rendering" limitation requires "causing at least some of the write-many memory cells in the memory array to become write-once memory cells." D.I. 154 at 2. The result of the asserted method claims is the creation of a write-once memory device. The specific technique is causing write-many memory cells in an existing write-many memory device to become write-once memory cells. This Court only rejected Micron's argument that the claims somehow restrict the rendering technique itself (i.e., by requiring the use of a maximum write count as Micron argued). D.I. 149 at 9-10. That is far different than saying, as Micron does here, that this Court construed the claims to be directed to a result rather than a technique for obtaining that result. This Court has plainly acknowledged that the claims are directed to a technique for creating a write-once memory device, and has only confirmed that "[a]bsent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Id*., citing *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381F.3d 1352, 1358 (Fed. Cir. 2004).

Beyond the claim language itself, as this Court has recognized, the specification is a helpful source of evidence in determining whether the claims are directed to an abstract idea. *SynKloud Techs., LLC v. HP Inc.*, Civil Action No. 19-1360-RGA, 2020 WL 5798725, at *3 (D. Del. Sept. 29, 2020) (citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) and *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015)).

---

879 F.3d 1299, 1303, 1305 (Fed. Cir. 2018) (method claim comprising only three steps found to recite more than a mere result).

The '063 specification further confirms that the invention of the asserted claims improved upon conventional memory devices. As the '063 patent states, while write-many memory devices were known in the art, there were no write-many memory devices that controlled the allowable number of writes. Ex. 1 to Lang Decl. 1:12-14, 38-40. And as Dr. Wolfe opines, devices with write-once memory cells were known in the prior art, but those devices were not created from write-many memory devices. Wolfe Decl. ¶115.

The '063 specification further describes that with its preferred embodiments, a write-many memory device can comprise some blocks that are limited to a maximum number of writes and other blocks, such as those that store file structures that are frequently updated, that are not restricted to any number of writes. Ex. 1 to Lang Decl. 7:6-14. In the context of the asserted claims, therefore, memory cells that have been rendered as write-once memory cells can be used to store data that is intended for permanent storage, while the remaining write-many memory cells can be used to store data that can be frequently erased and re-written.

Transforming some of the write-many-memory cells in a write-many memory device into write-once memory cells according to the asserted method claims provides increased flexibility and efficiency compared to manufacturing some of the memory cells in the array as write-many and manufacturing other memory cells in the array as write-once. Indeed, Micron's own accused devices demonstrate the advantages of memory devices manufactured as write-many, where some of the write-many memory cells in the array are then rendered as write-once. For example, any block of write-many memory cells in the memory array of a Micron NAND flash device can be selected for the OTP area in that device. *See, e.g.,* Ex. E at MIMS00021128. If the selected block fails testing, a different block of write-many memory cells can be selected from the memory array. Ex. C 157:6-157:24, 188:23-189:5. If, by contrast, the memory cells intended for

the OTP area were all *manufactured* as write-once, and those cells failed testing, the device would then not be capable of having an OTP area.

It can readily be seen that the focus of the asserted claims of the '063 Patent is on improvements in the field of computer memory systems, namely, a technological improvement in the creation of write-once memory devices from write-many memory devices. The asserted claims are far different than claims found in previous cases to be directed to "economic or other tasks for which a computer is used in its ordinary capacity." *See Enfish*, 822 F.3d at 1334. The Federal Circuit has repeatedly confirmed that improvements to computer memory systems are not directed to an abstract idea. *See Enfish,* 822 F.3d 1336-37, 1339 (claimed self-referential table is "designed to improve the way a computer stores and retrieves data in memory," and is not simply the performance of "economic or other tasks for which a computer is used in its ordinary capacity"); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) (improvement to a computer memory system not directed to an abstract idea). This Court, too, has specifically rejected arguments that claims that recite a technical improvement in computer technology are directed to an abstract idea. *LiTL LLC v. Lenovo (U.S.) Inc.*, No. CV 20-689-RGA, 2022 WL 610739, at *5 (D. Del. Jan. 21, 2022) (finding that claims that focus on allowing a portable computer device to be operated in multiple physical configurations or "display modes" is specific, technical improvement in the field of portable computing devices and not an abstract idea).

The numerous cases to which Micron cites to support its functional result argument are simply inapposite. The asserted claims of the '063 patent do not simply claim collecting, analyzing, manipulating and displaying on a computer data that had previously been collected, analyzed, manipulated and displayed manually, like the method claim in *University of Florida*

18

*Research Foundation, Inc. v. GE Co*., 916 F.3d 1363 (Fed. Cir. 2019). The asserted claims of the '063 patent are not providing a mobile phone user targeted advertisements based on the user's television viewing habits. *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1357 (Fed. Cir. 2021). They are not software-based claims reciting an "attention manager" that merely managed the presentation of two sets of information on a display screen and that lacked "any arguable technical advance over conventional computer and network technology for displaying information." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1338 (Fed. Cir. 2016). The asserted claims are not software claims directed to a system for transmitting regional broadcast signals to devices located in remote regions, *Affinity Labs of Texas v. DIRECTV LLC*, 838 F.3d 1253 (Fed. Cir. 2016), or merely software-based claims relating to a system for streaming audio/visual data over the internet. *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329 (Fed. Cir. 2017). The asserted claims are not simply software-based claims relating generally to systems for uploading data files from devices such as personal computers to a service provider, *Dropbox, Inc. v. Synchronoss Technologies., Inc.*, 815 F. App'x 529 (Fed. Cir. 2020), or software claims relating to a media distribution system that merely recite generic descriptions of computer components and functions. *B# on Demand LLC v. Spotify Tech. S.A.*, 484 F.Supp.3d 188, 203 (D. Del. 2020).

Not every limitation of a claim must specify how that limitation is performed in order to be patent-eligible. *See Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1148, 1150 (Fed. Cir. 2019) (finding claim reciting a "varying device" that checked for errors by applying permutations in time to be patent-eligible even though the claim did not specify how the permutations were modified in time). What claim 42 does specifically recite is a particular and

unique method for creating a write-once memory device from a write-many memory device, that is different, for example, than manufacturing a write-once memory device in the first instance.

### 2. The asserted claims provide an inventive concept

Because the asserted claims of the '063 Patent are not directed to an abstract idea, there is no need to proceed to *Alice's* step 2 analysis. However, even if a step 2 analysis were necessary, the claim limitations still "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1367 (Fed. Cir. 2018). The '063 patent expressly states that at the time of the patent there were no write-many memory devices that controlled the allowable number of writes, and Dr. Wolfe opines that there were no write-once memory devices that were created from existing write-many memory devices. Ex. 1 to Lang Decl. 1:12-14, 38-40; Wolfe Decl. ¶115. Alleged improvements to the prior art described in a patent's specification and "captured in the claims" can "create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities"—thus precluding summary judgment. S*ee BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). *See also Peloton Interactive, Inc. v. Echelon Fitness, LLC*, Civil Action No. 19-cv-1903-RGA, 2020 WL 3640064, at *1 (D. Del. July 6, 2020).

Moreover, still relevant to the step 2 inquiry is the machine-or-transformation test, which can provide a "useful clue" as to whether the invention is patent-eligible. *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). A claimed process can be patent-eligible under § 101 if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008) (en banc), *aff'd on other grounds*, *Bilski*, 561 U.S. 593. The claims of the '063 Patent meet the first prong because it applies to a write-many memory device having write-many

20

memory cells. They meet the second prong of the test because they "transform" at least some of the write-many memory cells into write-once memory cells. Thus, the claims recite more than merely manipulating or translating data from one form to another.

### D. Micron's Theory of Non-Infringement of the '498 Patent Is Based on an Improper Claim Construction of "Assigned Blocks"

Micron attempts to change the clear construction of both the Federal Circuit and of this Court as to what it means for assigned blocks to be shifted from one logical zone to another. Micron would add to this Court's claim construction the requirement that at all times during the process in which blocks are shifted from logical zone to another logical zone, they must have logical addresses assigned to them. In other words, according to Micron, blocks with logical addresses assigned to them must be shifted directly between logical zones. There can be no intermediate state in which the logical address of the block is temporarily removed during the shifting process. This requirement is nowhere in the claims as construed by this Court, and would further be contrary to how blocks must actually be shifted from one logical zone to another logical zone.[6]



Micron does not dispute that in the accused ████████████████████ ████████████████████████████ Micron further does not dispute that when ████████ ███████████████████████████████

---

[6] Contrary to Micron's storyline that IMS has done an "about-face" (D.I. 289 at 18), IMS has maintained throughout, both at the Federal Circuit and before this Court, that blocks that are shifted from one logical zone to another logical zone must be blocks that have had logical addresses assigned to them. At claim construction hearing, uncertain as to why Micron wanted to add "assigned blocks" to the claim construction since the Federal Circuit had already construed the claim term to require blocks with logical addresses assigned to them, counsel for IMS expressed concern that adding redundancy to the construction could confuse the jury. Ex. G at 54:25-56:24. IMS has never changed its position as to whether blocks that are shifted from one logical zone to another must be blocks that have had logical addresses assigned to them.

██████████████████████████████████████████████████████████

████████████████████████████████████ D.I. 289 at 19-20. This is all that is required

for the shifted blocks to be "assigned blocks" within this Court's claim construction, that a block

that had █████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████ *See* Wolfe Decl. ¶33. This is entirely different than what is disclosed

in the prior art Tanaka reference that Micron asserted in IPR. In Tanaka, the redundant blocks

that were used to replace defective blocks in logical zones *never* had logical addresses assigned

to them before they were moved into the logical zones, which is precisely why the Patent Trial

and Appeal Board, on remand from the Federal Circuit and applying the proper claim

construction, determined that they did not meet the limitations of the claims. Ex. I at 12-14.

Micron makes the same unfounded argument for the P320/P420 products. Again, Micron

does not dispute █████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ D.I. 289 at 21. Again,

however, the claims do not preclude these intermediate steps. Wolfe Decl. ¶98. Micron

improperly limits the ████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████ Ex. D ¶85. Accordingly, Micron's motion

for summary judgment of invalidity of the '498 patent must fail.

### E.  There Is Sufficient Evidence of Record to Demonstrate that IMS Has Complied with Any Obligation to Mark under 35 U.S.C. § 287

Micron asserts that it is entitled to summary judgment of no pre-suit damages on the '498 patent by virtue of two SanDisk products (the "microSD" and "iNAND and Ultra e.MMC 4.41") that allegedly embody the asserted claims. D.I. 292 at 23-24. But the very evidence relied upon by Micron's expert shows that the identified SanDisk products do *not* embody the asserted claims of the '498 patent. Mr. McAlexander identified specific documents that he relied upon to describe the functionality of these products. Ex. 5 to Lang Decl. ¶¶132-140. For one of the products, the product manual on which Mr. McAlexander relies refers only to such features and functionality as a NAND flash memory divided into blocks and a controller that "manages interface protocols, engages in "data storage and retrieval," performs "defect handling" and "wear leveling," and rewrites "data from a defective sector to a good sector." *Id*. ¶¶134-136. For the other two identified products, the data sheet on which Mr. McAlexander relies refers only to a memory that includes "block[s]" and erase groups and a controller that engages in "sophisticated defect and error management" and "will rewrite data from a defective sector to a good sector." Id. ¶¶137-138. Presumably, Mr. McAlexander has culled from these documents the description of all the functionality that he believes shows that the identified products embody the limitations of the asserted claims.

As Dr. Wolfe confirms, however, none of the products "engage[] in block replacement, groups blocks into logical zones, or moves blocks between logical zones." Wolfe Decl. ¶100. In other words, the only documents upon which Mr. McAlexander relies to describe the products' functionality is itself affirmative evidence that these products do *not* embody the requisite

23

functionality. At the very least, it affords a reasonable inference that creates a genuine dispute of material fact so as to defeat Micron's motion for summary judgment. *Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("Compliance with § 287 is a question of fact.") *see also Williams v. Borough of West Chester*, 891 F.2d 458, 461 (3d Cir. 1989) (non-moving party's evidence "may amount to less (in the evaluation of the court) than a preponderance.").

### F. There Is Sufficient Evidence to Create a Genuine Dispute as to Whether Micron's Alleged "Foreign Sales" Are Infringing Sales Under § 271

As an initial matter, Micron does not contest that IMS is entitled to damages for foreign sales of accused products made, sold, or imported into the U.S. Citing nothing more than vague cherry-picked deposition excerpts from its Rule 30(b)(6) witness, Micron asserts that "its wholly foreign sales (*i.e.*, sales of accused products that are made and sold entirely overseas) . . . are

███████████████████████████████████████████████████

███████████████." D.I. 289 at 24-25 (emphasis added). Evidence in the record, however, demonstrates the existence of triable issues regarding "whether the relevant transactions [at issue] [are] domestic or extraterritorial in nature." *See Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 992 (Fed. Cir. 2022).

For example, Micron (from within the U.S.) ████████████████████████

███████████████.[7] Deposition testimony from its corporate designee also demonstrates

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[7] Ex. J at MIMS00025488; Ex. K at MIMS00025518; Ex. L at MIMS00025502; Ex. M at MIMS00025473.

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████" Ex. N at 111-112.  Further, in SEC filings, Micron states that, along with "its

consolidated subsidiaries . . . [w]e sell our products into various markets through our four

business units . . . ." Ex. O at MIMS00023640, 23642.  Likewise, "[w]e market our

semiconductor memory and storage products primarily through our own direct sales force and

maintain sales or representative offices in our primary markets around the world." *Id*. at

MIMS00023647. For these reasons the Court should deny Micron's motion for partial summary

judgment.

### G. There Is Sufficient Record Evidence to Support Micron's Liability For Infringing Acts of Its Subsidiaries

A parent company may be held liable for the patent infringement of its subsidiaries when

it exercises dominion or control over them. *See Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, Civ. No.

10–63–LPS., 2011 WL 1557930, at *3 n.1 (D. Del. Apr. 21, 2011) (citing *A. Stucki Co. v.

Worthington Indus., Inc.*, 849 F.2d 593, 596 (Fed. Cir. 1988)). Evidence in the record here is

sufficient to establish that Micron exercises sufficient dominion and control over its subsidiaries

so as to make it liable for those subsidiaries' infringing actions. At the very least, this evidence

raises triable issues regarding Micron's liability for its wholly owned subsidiaries' acts of

infringement. *See, e.g.,* Ex. P at MIMS00025382 (showing that Micron exercises, directly or

indirectly, 100% ownership and control of its various subsidiaries).

In addition, Micron's SEC filings present a "factual scenario of close coordination and a

joint strategy" with its subsidiaries for the manufacture and sale of the accused products. *See

Brit. Telecom. PLC v. IAC/InteractiveCorp.*, 356 F. Supp. 3d 405, 410 (D. Del. 2019).

Specifically, Micron touts itself, "including its consolidated subsidiaries, [as] an industry leader

in innovative memory and storage solutions." Ex. O MIMS00023640-23642. Further, Micron

refers to itself and its subsidiaries collectively as "we." *Id*. at MIMS00023640-23645 ("[w]e

manufacture our products at our worldwide, *wholly-owned and joint venture facilities* located in

Taiwan, Singapore, the United States, Japan, and China . . . .") (emphasis added).  Likewise,

"[w]e market our semiconductor memory and storage products primarily *through our own direct*

*sales force and maintain sales or representative offices* in our primary markets around the

world." *Id*. at MIMS0002347(emphasis added).  Notably, Micron and at least one of its

subsidiaries also share a corporate address and have overlapping corporate officers. Ex. J at

MIMS00025488. *Compare also* Ex. Q with Ex. T at 15-16. *See StrikeForce Techs., Inc. v.*

*PhoneFactor, Inc.*, No. CV 13-490-RGA-MPT, 2013 WL 6002850, at *5 (D. Del. Nov. 13,

2013), as amended (Nov. 14, 2013).

 Micron's sales documents further support its liability for its subsidiaries' infringing

actions. In particular, sales of the accused products to end customers are "instigated" by ███

████████████████████████████████████████. *StrikeForce Techs.* at *5. *Compare* Ex. R

at MIMS00026888 col. S (Micron subsidiaries only) *with* Ex. S at MIMS00035408 col. L

(identifying "end customers").

 Additionally, certain ██████████████████ and ██████████████████ refer to

Micron and its subsidiaries collectively as a global enterprise. Ex. K at MIMS00025518; Ex. L at

MIMS00025502. Micron's ███████████████████████████████████████████

████████████████████████████████████████████████████. Ex. J at

MIMS00025488; Ex. M MIMS00025473. These same agreements also ████████████████

████████████████████████████████████████████████████. *See*

Ex. J at MIMS00025495; Ex. K at MIMS00025525; Ex. L at MIMS00025509; Ex. M at MIMS00025480.

In *Limestone Memory Systems LLC v. Micron Technology, Inc.*, Case No: SA CV 15-0278-DOC (KESx), 2019 WL 8690217, at *17-18 (C.D. Cal. Dec. 26, 2019), the district court noted evidence substantially similar to the evidence in this case in denying Micron's motion for summary judgement regarding liability for its subsidiaries' acts of infringement. In the same way here, the above evidence at the very least raises genuine issues of material fact precluding partial summary judgement.[8]

## IV.   CONCLUSION

For the foregoing reasons, Micron's motion for summary judgment should be denied.

Dated: April 18, 2022                          Respectfully submitted,

Edward C. Flynn (admitted *pro hac vice*)       FARNAN LLP
Philip E. Levy (admitted *pro hac vice*)
Jack B. Cobetto (admitted *pro hac vice*)       /s/ Brian E. Farnan
ECKERT SEAMANS CHERIN &                          Brian E. Farnan (Bar No. 4089)
MELLOTT, LLC                                     Michael J. Farnan (Bar No. 5165)
600 Grant St., 44th Floor                        919 North Market Street, 12th Floor
Pittsburgh, PA 15219                             Wilmington, DE 19801
(412) 566-6000                                   Telephone: 302-777-0300
EFlynn@eckertseamans.com                         Facsimile: 302-777-0301
PLevy@eckertseamans.com                          bfarnan@farnanlaw.com
JCobetto@eckertseamans.com                       mfarnan@farnanlaw.com

                                                 *Attorneys for Plaintiff Innovative Memory
                                                 Systems, Inc.*

---

[8] To the extent that IMS is required to amend its complaint, IMS requests leave to amend its pleadings to conform to the evidence.  *See* Fed. R. Civ. P. 15(b)(2) (allowing a party "at any time . . . to amend the pleadings to conform them to the evidence"); *see also Gov't Emps. Ret. Sys. of Virgin Islands v. Gov't of Virgin Islands*, 995 F.3d 66, 82 (3d Cir. 2021).

Daniel Melman (admitted *pro hac vice*)
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
10 Bank St. Suite 700
White Plains, NY 10606
(914) 286-6447
DMelman@eckertseamans.com

Andrew Schwerin (admitted *pro hac vice*)
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
Two Liberty Place, 22nd Floor,
50 South 16th Street
Philadelphia, PA 19102
ASchwerin@eckertseamans.com
(215) 851-8450