CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INNOVATIVE MEMORY SYSTEMS, INC., | |
| Plaintiff, | Civil Action No. 1:14-cv-1480-RGA |
| v. | **JURY TRIAL DEMANDED** |
| MICRON TECHNOLOGY, INC., | **REDACTED PUBLIC VERSION** |
| Defendant. | |

**MICRON TECHNOLOGY, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

OF COUNSEL:

Jared Bobrow, (Pro Hac Vice)
Jason Lang, (Pro Hac Vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Tel: +1 650-614-7400
jbobrow@orrick.com
jlang@orrick.com

Will Melehani (Pro Hac Vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Tel: +1 415-773-5700
wmelehani@orrick.com

Olamide Olusesi (Pro Hac Vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C.20005-1706
Tel: +1 202-339-8400
oolusesi@orrick.com


DATED:  May 2, 2022

Frederick L. Cottrell, III
Travis Steven Hunter
Tyler E. Cragg
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Tel:  + 1-302-658-6541
cottrell@rlf.com
hunter@rlf.com
cragg@rlf.com

*Attorneys for Defendant
Micron Technology, Inc.*

CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

TABLE OF EXHIBITS ................................................................................................................. iv

I.      THE '063 PATENT IS INELIGIBLE UNDER SECTION 101 ....................................... 1

II.      IMS'S OPPOSITION CONFIRMS THAT MICRON IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '063 PATENT ......... 4

III.      UNDER IMS'S INFRINGEMENT THEORY, EIICHI INVALIDATES THE '063 PATENT'S ASSERTED CLAIMS. ............................................................................ 6

IV.      IMS'S ADMISSIONS ARE  FATAL TO ITS INFRINGEMENT CLAIM UNDER THE '498 PATENT. ............................................................................................ 9

V.      IMS'S OPPOSITION CONFIRMS THAT IMS IS NOT ENTITLED TO PRE-SUIT DAMAGES FOR THE '498 PATENT FOR FAILURE TO MARK ................... 11

VI.      IMS CANNOT RECOVER WORLDWIDE DAMAGES UNDER ITS "LEAST RESTRICTIVE DEFINITION" DAMAGES THEORIES. ........................................... 12

VII.      IMS RAISES NO FACTS SUGGESTING THAT MICRON IS LIABLE FOR THE CONDUCT OF ITS SUBSIDIARIES. ................................................................. 13

VIII.      CONCLUSION ............................................................................................................... 14

i

CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Am. Axle & Mfg. v. Neapco Holdings LLC*,
    967 F.3d 1285 (Fed. Cir. 2020)..........................................................................1

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
    672 F.3d 1335 (Fed. Cir. 2012)..........................................................................6

*Boehringer Ingelheim Ventmedica, Inc. v. Schering-Plough Corp.*,
    320 F.3d 1339 (Fed. Cir. 2003)..........................................................................7

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
    482 F.3d 1347 (Fed. Cir. 2007)..........................................................................6

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    899 F.3d 1356 (Fed. Cir. 2018)......................................................................4, 5

*cxLoyalty, Inc. v. Maritz Holdings Inc.*
    986 F.3d 1367 (Fed. Cir. 2021)..........................................................................3

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)..........................................................................4

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)..........................................................................3

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*,
    424 F.3d 1276 (Fed. Cir. 2005)..........................................................................9

*Free Stream Media Corp. v. Alphonso Inc.*,
    996 F.3d 1355 (Fed. Cir. 2021)..........................................................................2

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    831 F.3d 1369 (Fed. Cir. 2016)........................................................................13

*Horizon Meds. LLC v. Alkem Labs., Ltd.*,
    No. 18-1014-RGA, 2020 WL 4569472 (D. Del. Aug. 7, 2020) ............................11

*Innovative Memory Sys., Inc. v. Micron Tech., Inc.*,
    781 F. App'x 1013 (Fed. Cir. 2019) ...................................................................9

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018)......................................................................1, 2

**CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY**

*Ipa Techs. v. Amazon*,
    352 F. Supp. 3d 335 (D. Del. 2019)....................................................................................3, 4

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019).................................................................................................2

*Limestone Memory Sys. LLC v. Micron Tech., Inc.*,
    No. SA CV 15-0278-DOC (KESx), 2019 WL 8690217 (C.D. Cal. Dec. 26,
    2019) ........................................................................................................................................14

*LiTL LLC v. Lenovo (U.S.), Inc.*,
    No. 20-689-RGA, 2022 WL 610739 (D. Del. Jan. 21, 2022)....................................................3

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
    No. 14-cv-03657-SI, 2019 WL 2437073 (N.D. Cal. June 11, 2019)......................................12

*Nash v. Microsoft Corp.*,
    No. H-03-1667, 2005 WL 5912091 (S.D. Tex. Mar. 31, 2005) ...............................................5

*In re Schreiber*,
    128 F.3d 1473 (Fed. Cir. 1997).................................................................................................8

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)...................................................................................................3

*T-Jat Sys. 2006 v. Expedia, Inc.*,
    No. 16-581-RGA-MPT, 2017 WL 896988 (D. Del. Mar. 7, 2017)...........................................4

*Transclean Corp. v. Bridgewood Servs., Inc.*,
    290 F.3d 1364 (Fed. Cir. 2002).................................................................................................8

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)...................................................................................................4

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017).................................................................................................3

*WiAV Solutions LLC v. Motorola, Inc.*,
    732 F. Supp. 2d 634 (E.D. Va. 2010) .......................................................................................2

*Z4 Technologies, Inc. v. Microsoft Corp.*,
    507 F.3d 1340 (Fed. Cir. 2007)..................................................................................................6

CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY

### TABLE OF EXHIBITS[1]

| Exhibit | Document |
| --- | --- |
| A | Declaration of Joseph C. McAlexander III in Support of Micron Technology, Inc.'s Opening Brief In Support of Its Motion for Summary Judgment, dated March 24, 2022 [Filed Under Seal] |
| 1 | U.S. Patent No. 7,000,063 ("'063 patent") |
| 2 | U.S. Patent No. 6,901,498 ("'498 patent") |
| 3 | Claim Construction hearing transcript, dated November 3, 2020 |
| 4 | Excerpts from the Opening Infringement Expert Report of Andrew Wolfe, Ph.D., dated January 5, 2022 [Filed Under Seal] |
| 5 | Excerpts from the Expert Report of Joseph C. McAlexander III Regarding Non-Infringement of U.S. Patent Nos. 6,901,498 and 7,000,063, dated February 4, 2022 [Filed Under Seal] |
| 6 | Excerpts from the deposition transcript of Andrew Wolfe, Ph.D, taken on March 10, 2022 [Filed Under Seal] |
| 7 | Excerpts from the Reply Report of Andrew Wolfe, Ph.D. Regarding Infringement, dated February 23, 2022 [Filed Under Seal] |
| 8 | Excerpts from the Rebuttal Report of Andrew Wolfe, Ph.D., dated February 4, 2022 [Filed Under Seal] |
| 9 | JPH06274656A ("Eiichi") (MIMS-PA0011473) |
| 10 | Certified Translation of JPH06274656A ("Eiichi") (MIMS-PA0011496) |
| 11 | Excerpts from the deposition transcript of Kevin Kilbuck, taken on November 2, 2021 [Filed Under Seal] |
| 12 | U.S. Patent No. 8,949,507 |
| 13 | *Innovative Memory Systems, Inc. v. Micron Technology, Inc.*, Appeal No. 2017-2472, Brief for Appellant, dated February 14, 2018 |
| 14 | *Micron Technology, Inc. v. Innovative Memory Systems, Inc.*, IPR2016-00330, Patent Owner's Opposition Brief on Remand, dated December 10, 2019 |
| 15 | Excerpts from the deposition transcript of Sunwoong Hwang, taken on November 16, 2021 [Filed Under Seal] |
| 16 | Confidential Patent Purchase Agreement between SanDisk Technologies, Inc., Innovative Memory Systems, Inc., and Wi-Lan, Inc., dated June 18, 2014 (IMS000008897) [Filed Under Seal] |
| 17 | Excerpts from the Opening Damages Expert Report of Jonathan D. Putnam, Ph.D., dated January 5, 2022 [Filed Under Seal] |
| 18 | Excerpts from the Corrected Expert Reply Report of Jonathan D. Putnam, Ph.D., dated March 7, 2022 [Filed Under Seal] |
| 19 | ███ OTP Program (MIMS00021114) [Filed Under Seal] |

---

[1] Exhibits A and 1-31 are attached to the Declaration of J. Jason Lang in Support of Micron's Opening Brief in Support of its Motion for Summary Judgment, D.I. 290.  Exhibit 32 is attached to the Declaration of J. Jason Lang in Support of Micron's Reply Brief in Further Support of its Motion for Summary Judgment, filed concurrently herewith.

**CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY**

| Exhibit | Document |
|---|---|
| 20 | ███ OTP, One-Time Programmable (OTP) Block (MIMS00021085) [Filed Under Seal] |
| 21 | CompactFlash – Wikipedia (MIMS-PA0012199) |
| 22 | SmartMedia – Wikipedia (MIMS-PA0012286) |
| 23 | Memory Stick – Wikipedia (MIMS-PA0012212) |
| 24 | Smart Card Security (MIMS-PA0001320) |
| 25 | US 4,105,156 (MIMS-PA0001676) |
| 26 | The Big Battle Over Tiny Storage Cards 1996 (MIMS-PA0001613) |
| 27 | Smart Cards Seem a Sure Bet 1999 (MIMS-PA0001607) |
| 28 | USB CameraMate Saves Time 1999 (MIMS-PA0005674) |
| 29 | Digital Cameras 1998 (MIMS-PA0000093) |
| 30 | U.S. Patent No. 6,446,177 (MIMS-PA0008444) |
| 31 | U.S. Patent No. 6,370,075 (MIMS-PA0003424) |
| 32 | Excerpts from Innovative Memory Systems, Inc.'s Responses and Objections to Micron Technology, Inc.'s Second Set of Interrogatories to IMS (Nos. 17-22), dated March 16, 2021 |

**CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY**

## I.      THE '063 PATENT IS INELIGIBLE UNDER SECTION 101.

IMS's opposition raises no facts suggesting that the Asserted Claims of the '063 patent are anything but abstract.[2]  IMS's assertion that the claims are not "result-oriented" because they recite starting with write-many memory cells before achieving the "result" of write-once memory cells (Opp. at 16) is based on a misapprehension of Federal Circuit precedent.  "Result-oriented" claims are not claims that recite the output of a method without reciting the starting point, as IMS suggests. Nor does the recitation of a starting point somehow avoid "result-oriented" claiming.  *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1290 (Fed. Cir. 2020) (finding claims impermissibly recited a "desired result" despite step for "providing a hollow shaft member" before performing additional steps).  Rather, claims are "result-oriented" when they are "drafted in such a result-oriented way that they amounted to encompassing the 'principle in the abstract' no matter how implemented."  *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018). Such is the case here.

The claims of the '063 patent are impermissibly "result-oriented" because they do not claim *how* one renders write-many cells into write-once memory cells, but instead claim the resulting rendering itself, "no matter how implemented."  D.I. 289 ("Mot.") at 4-7.  IMS's current assertions that the claims recite a "specific technique" for achieving this rendering (D.I. 308, "Opp." at 16) directly contradict its prior representations to the Court that "there is no specific technique that was required by the invention."  Ex. 3, 32:4-5.  Further, the assertions are facially untrue in light of the claim construction that IMS advanced and the Court adopted.  *Id.*, 24:7-8 (arguing that "there is nothing in the clear and unambiguous language that says anything about how" the claimed

---

[2] IMS's accusation that Micron has oversimplified the claims is empty rhetoric, because IMS describes its own claims in essentially the same way that Micron does.  *See* Opp. at 15 ("taking an existing write-many memory device comprised of a plurality of write-many memory cells" and "causing at least some of those write-many memory cells to become write-once memory cells.").

**CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY**

rendering occurs).  And neither the patent specification nor IMS's expert's opinion remedies the fact that the claims as construed extend to all ways of achieving the claimed rendering without specifying *how* the rendering is done.  *See Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355 (Fed. Cir. 2021) (finding claims were abstract and did not recite a computer improvement despite unclaimed details in the specification).  The Federal Circuit has repeatedly confirmed that such claims—directed to the idea of a solution rather than how that solution is achieved—are abstract.  Mot. at 5-9.

IMS offers no relevant distinctions between this case and the numerous cases that have found such "result-oriented" claims to be abstract.  Opp. at 18-19.  Indeed, IMS provides no rebuttal to the case law's reasoning that claims must "recite a practical way of applying an underlying idea" and may not be "drafted in such a result-oriented way that they amounted to encompassing the 'principle in the abstract' no matter how implemented."  *Interval Licensing*, 896 F.3d at 1343; *see also* Mot. at 5-7 (collecting cases).  The only case that IMS cites for the proposition that claims need not specify how their functional results are achieved actually says the opposite.  *Koninklijke KPN N.V. v. Gemalto M2M GmbH,* 942 F.3d 1143, 1150 (Fed. Cir. 2019) (acknowledging that "[a]n improved result, without more stated in the claim, is not enough to confer eligibility to an otherwise abstract idea" and that "claims must recite a specific means or method that solves a problem in an existing technological process").

IMS's contention that its claims provide "increased flexibility and efficiency" also does not change their abstract nature.  IMS has provided no authority holding that such purported advantages remedy the absence of any implementation detail in a result-oriented claim.  On the contrary, the Federal Circuit has repeatedly found functional, resulted-oriented claims to be abstract despite assertions that the claims provide technological advantages.  *See cxLoyalty, Inc.*

2

**CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY**

*v. Maritz Holdings Inc.* 986 F.3d 1367, 1379 (Fed. Cir. 2021) (claims provided no "technological solution to a technological problem" because they did not "provide any guidance as to how" the improvement was achieved); *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910-11 (Fed. Cir. 2017) (finding claims were not "directed to an improvement in computer functionality" when they did not "establish how the focus of the methods is achieved").

The caselaw on which IMS relies is thus distinguishable. Opp. at 18. In *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016), and *LiTL LLC v. Lenovo (U.S.), Inc.*, No. 20-689-RGA, 2022 WL 610739, at *5-6 (D. Del. Jan. 21, 2022), there were no contentions that the claims were directed to functional results without specifying how those results were achieved, as is the case here. Similarly, as this Court has recognized, the claims at issue in *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017), "contained specific limitations to avoid claiming 'all types and all forms of categorical data storage,'" and are thus unlike the Asserted Claims here that *do* capture all ways of performing the claimed "rendering." *Ipa Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 346 (D. Del. 2019) (distinguishing *Visual Memory* and finding patents that lacked "any limiting detail that confines the claim[s] to a particular solution to an identified problem" to be ineligible).

IMS likewise fails to identify any inventive concept in the '063 patent's claims. IMS asserts that the claims are inventive because the '063 patent states that it was not known how to render write-many memory cells into write-once memory cells. Opp. at 20 (citing Ex. 1 at 1:12-14, 38-40). This statement actually confirms the claims' ineligibility. Instead of reciting an inventive concept, the '063 patent states the problem it sets out to solve and then claims the very idea of solving that problem. This case thus mirrors the Court's ineligibility holding in *Ipa Techs.*, where the "goal of the invention [wa]s identified in the specification" but the claims were "drafted

3

CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY

so broadly as to cover any method that can achieve" that goal.  352 F. Supp. 3d at 346.

IMS also invokes the pre-*Alice* "machine-or-transformation" test, but no Federal Circuit case has held that result-oriented claims can be saved by this non-dispositive test.  Even if applicable, IMS's claims indisputably fail the test.  First, the claims' recitation of various memory devices does not satisfy the "machine" prong because the devices are not "novel machine[s]." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716-17 (Fed. Cir. 2014).  The '063 patent describes both "write-many" and "write-once" memory devices as known devices.  '063 patent at 1:8-12, 3:56-61.  Second, the claims fail the "transformation" prong.  The '063 patent's specification (but not its claims) describes achieving the claimed "rendering" by setting a data value for allowed writes, "N," to 1 (for write-once) rather than, say, to 2 (for write-many).  *Id.* at 3:51-61.  But setting a value is "the mere manipulation or reorganization of data," which "does not satisfy the transformation prong."  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011).  Moreover, IMS represented to the Court that this type of data manipulation was not inventive.  Ex. 3, 32:23-34:7 (admitting that there was "nothing novel" about setting variables).[3]

## II. IMS'S OPPOSITION CONFIRMS THAT MICRON IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '063 PATENT.

The Court's claim construction requires that the rendered write-once memory cells "cannot be written to more than once."  D.I. 154 at 1.  IMS does not dispute that Micron's memory cells can be written to more than once after they are allegedly rendered into "write-once memory cells." Mot. at 12; Opp. at 6.  Summary judgment is thus fully warranted.

IMS attempts to side-step the Court's construction by citing to *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1360 (Fed. Cir. 2018), for the proposition that "infringement

---

[3] Although Micron addressed claims 43 and 44 in its opening brief, IMS offers no argument that the additional limitations in those dependent claims are material to eligibility.  Mot. at 4 n.2, 10.

**CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY**

is not avoided" because Micron's products include a non-infringing test mode.  Opp. at 6.  But *Core Wireless* is inapposite because that case concerned an affirmative claim limitation (one that can be met even if non-infringing modes are present in the accused product) whereas the limitation at issue here—"cannot be written to more than once"—is a negative limitation (one which requires that certain modes *not* be present in the accused product).  Specifically, the *Core Wireless* court rejected Apple's position that the claim language "receiv[e] a timing advance value one time for a multi-frame structure" (899 F.3d at 1362) was a negative "one *and only one*" limitation, and therefore found that the presence of other modes for receiving more than one "timing advance" value did not establish non-infringement.  *Id.*  The court illustrated how an affirmative limitation can be infringed using an analogy:  "a patent that claims an automobile configured to operate in third gear would be infringed by an automobile that is configured to operate in first, second, and third gears."  *Id.* at 1363.  By contrast, this Court construed the '063 patent to include a *negative* limitation—the rendered memory cells "cannot be written to more than once."  Mot. at 11-12.  Applying the *Core Wireless* analogy, this negative limitation is like a claim for an automobile that cannot operate in any gear other than first gear.  For such a negative limitation, the ability to operate in third gear is not merely a "non-infringing mode"; rather, the ability *establishes* that the limitation is not infringed.  *See Nash v. Microsoft Corp.*, No. H-03-1667, 2005 WL 5912091, at *11 (S.D. Tex. Apr. 1, 2005) (explaining that a negative limitation is not infringed when the device "performs a function explicitly moved outside the scope of the claims") (citations omitted).  The same is true for Micron's ███████.  That Micron's memory cells can be repeatedly written to ███████ proves that the negative requirement that the cells "cannot be written to more than once" is not infringed.[4]

---

[4] *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340 (Fed. Cir. 2007) is likewise distinguishable

CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY

IMS's assertion that Micron is adding a "one-time permanent rendering" limitation to the claims is a red herring. The construed claims require that the rendered cells cannot be written to more than once, yet IMS is arguing that they can be "rendered" yet subsequently written to many times. IMS's suggestion that a "preferred embodiment" somehow supports this understanding by allowing the user to "override" write-once protection is incorrect. Opp. at 7. The part of the patent that IMS cites says nothing about "chang[ing] N to a different value" so as to allow writing to write-once cells more than once. It only says that the user can force cells to be erased, and specifically adds that erasing areas that have been written to the maximum number of times ***does not*** let the user "store a new file," *i.e.*, does not allow another write. *Id.*; '063 patent at 4:49-5:21.

## III.   UNDER IMS'S INFRINGEMENT THEORY, EIICHI INVALIDATES THE '063 PATENT'S ASSERTED CLAIMS.

Micron's Motion demonstrated that if IMS's temporary rendering theory is applied, then Eiichi anticipates and/or renders obvious the Asserted Claims. Mot. at 14-18. As to claim 42, IMS only argues that Eiichi does not disclose the claim's preamble limitation of "creating a write-once memory device from a write-many memory device." Opp. at 8-12. This is beside the point because the preamble is not limiting. Preambles generally are non-limiting, and IMS did not request during claim construction that the Court construe the preamble to be limiting. *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012) (noting that "as a general rule preamble language is not treated as limiting").[5]   IMS belatedly argues that the

---

because its claims recited an affirmative requirement that a key be "associated" with particular software.

[5] To the extent IMS is arguing for additional claim construction now, that argument is untimely. *See Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (affirming district court's finding that defendant waived a claim construction argument "by failing to raise it during the claim construction phase"). IMS is incorrect when it states that "[n]either Micron nor its expert disputes that the preamble is limiting." Opp. at 10. Mr. McAlexander opined that Eiichi discloses the preamble "if the preamble is limiting." *Id.*

**CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY**

preamble must be limiting because it "is the only portion of claim 42 that recites the purpose of the invention of that claim: creating a write-once memory device from a write-many memory device." Opp. at 9. But a "preamble simply stating the intended use or purpose of the invention will usually not limit the scope of the claim." *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1345 (Fed. Cir. 2003). Moreover, the preamble adds nothing to the claim because the limitations in the body restate the preamble. Specifically, the body of the claim recites "providing a memory device comprising a memory array comprising a plurality of write-many memory cell[s]" (*i.e.*, a write-many memory device) and the "rendering" limitation creates "at least some" "write-once memory cells" (*i.e.*, a write-once memory device).

But even if the preamble is deemed limiting, Eiichi discloses it. As explained in Micron's opening brief, Eiichi teaches that a write-once memory device is created from a write-many memory device when Eiichi's device is taken out of the write-many test mode and becomes a write-once device. Mot. at 15-16. IMS's disagreement is premised on its incorrect assertion that the preamble requires "start[ing] with a memory device that is fabricated as a write-many memory device" and "Eiichi discloses manufacturing a write-once memory device, not a write-many memory device." Opp. at 9-10. Neither the preamble nor any construction from this Court imposes such a requirement. Nor is there any support for one. Nowhere does the preamble require that the write-many memory device be originally manufactured/fabricated as a write-many memory device, nor does it otherwise recite how the write-many device was created. To the contrary, it says only that a write-once device is "creat[ed]" "from a write-many memory device."

IMS also argues that Eiichi does not anticipate claim 42 on the theory that "Eiichi's objective" is allegedly different than "the essential purpose of the '063 invention." Opp. at 12. This is irrelevant. Even if Eiichi's objective is the "polar opposite" of the "essence of claim 42's

**CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY**

invention" (and it isn't), a reference anticipates a claim if it discloses each of the claim's limitations, regardless of the reference's "purpose." *See In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997) (explaining that a reference "may be directed to an entirely different problem" but still anticipates if it discloses "every limitation recited in the claims").

As to claim 43, IMS's argues that Eiichi does not disclose a modular memory device. Opp. at 13. However, IMS's expert opined that a packaged memory chip meets claim 43's "modular memory device" limitation. Mot. at 17 (citing Ex. 4 ¶¶ 257-58). Eiichi also discloses performing tests on a packaged device, which, under IMS's interpretation, is a modular memory device removably couplable with a host. *Id.* at 17 (citing Ex. 10 ¶¶ [0011], [0017]). IMS ignores this evidence entirely. Opp. at 13.

Lastly, IMS asserts that Eiichi does not render claim 43 obvious because Eiichi allegedly discloses "a single chip microcomputer" that acts as the "brains" of the host device to which it is embedded and Micron allegedly provides no explanation "why it would have been obvious to remove from the host device the microcomputer that controls the host device's operations, and … put the microcomputer's circuitry on a separate, removable memory card." Opp. at 13-14. First, this argument has been waived because IMS never disclosed this theory in response to Micron's Interrogatory No. 18 that requested IMS's validity contentions. Ex. 32 at 8-15. Nor is the theory disclosed in IMS's expert report on validity. Ex. 8 ¶¶ 188-200. *Cf. Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002) (affirming preclusion of non-infringement theories because accused infringer did not timely disclose those theories in its interrogatory responses). Second, this argument is not supported by any expert testimony and misreads Eiichi's microcomputer disclosure. *See* Ex. 10 ¶¶ [0015], [0066], [FIGS. 1-4]. Indeed, Eiichi discloses an embodiment where the host device "brains" are separate and apart from the

CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY

microcomputer.   Ex. 10 ¶ [0019].   IMS's attorney argument is insufficient to raise a genuine dispute of material fact.   *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) (rejecting opposition to a summary judgment that relied on attorney argument).

## IV.   IMS'S ADMISSIONS ARE  FATAL TO ITS INFRINGEMENT CLAIM UNDER THE '498 PATENT.

IMS does not dispute that Micron's products operate as described in Micron's motion.[6] Indeed, it concedes that in the MX500 product, blocks are



Opp. at 22.  Likewise, IMS concedes that in the P320/P420 products, there is a

*Id.*  Thus, only ***unassigned blocks*** are shifted into IMS's "logical zone."

These admissions that Micron's blocks are                                                            are dispositive.   The Court's construction expressly requires shifting "assigned blocks" "from one logical zone" to another.   D.I. 154 at 2.   The Federal Circuit also construed the claims to require shifting of blocks that have assigned logical addresses.   *Innovative Memory Sys., Inc. v. Micron Tech., Inc.*, 781 F. App'x 1013, 1017-18 (Fed. Cir. 2019) (shifted blocks must have an "affiliation to a zone" and "zones" must "contain blocks that are already assigned for address translation").

IMS seeks to re-write the Court's construction to cover shifting blocks that are not assigned to a zone.   According to IMS, the Court's construction covers shifting a block that previously had, but no longer has, a logical address.   Opp. at 21-22.   But the construed claims require a "controller" that "can adjust zone boundaries such that assigned blocks from one logical zone are shifted to another logical zone."   D.I. 154 at 2.   The Court explained that the "assigned blocks" must be

---

[6] IMS implies that Micron "does not dispute" that its products include "logical zone[s]."  Opp. at 22.  This is incorrect, but this separate basis for non-infringement is not addressed in this motion.

CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY

"blocks" that "have logical addresses assigned to them."  *See* D.I. 149 at 11-12.  Nowhere did the Court suggest that blocks which ███████████████████████ could qualify as "assigned blocks."

Second, even if the Court were to revisit its construction, the '498 patent rejects any notion of adjusting zone boundaries such that blocks that were previously, but are no longer, assigned a logical address are shifted into a zone.  When blocks are shifted from one logical zone to another in the '498 patent, they retain the same logical addresses before, during, and after the shift.  *See* '498 patent, Fig. 6, 11:22-34.  For instance, in Figure 6, block 721 is still block 721 before and after the zone boundary shift.  *See id.*, Fig. 6.  Only the zone boundary has changed.  The '498 patent never contemplates that a block can lose its logical address or pass through some "intermediate" state before appearing in a different logical zone because the patent teaches and claims only the shifting of the boundaries between zones of blocks that have (and continue to have) logical addresses.  IMS's attorney argument that a requirement that blocks maintain their logical address during zone boundary movement is "contrary to how blocks must actually be shifted" both contradicts the '498 patent and has no support otherwise.  Opp. at 21.

IMS's repeated statements during IPR and appeal to the Federal Circuit regarding the scope of the '498 patent's claims—which IMS fails to explain away—confirm that its current position on the meaning of the claims is incorrect.  To avoid the PTAB's finding of unpatentability, IMS argued again and again that blocks that are "already assigned or mapped to logical addresses" must be shifted.  *E.g.*, Ex. 14 at 6; *see also id.* at 2, 7, 8.  Having secured a narrowing construction to avoid unpatentability, IMS now seeks to broaden the construction for infringement purposes by asserting that it covers moving blocks that admittedly lack logical addresses into a "logical zone."  IMS complains in a footnote that it has "maintained throughout" that it is enough that blocks "have had logical addresses" at some time in the past.  Opp. at 21 n.6.  This just isn't so.  Before serving

CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY

its expert reports on infringement, IMS never characterized the claims in this way. Instead, it repeatedly and consistently explained that "assigned blocks" must be shifted. *See* Ex. 14 at 6. IMS's attempt to play Monday-morning quarterback and ask this Court to reconstrue the claims to only carve out Tanaka—and ignore its clear statements during the IPR and appeal—invites this Court to commit legal error. *See, e.g., Horizon Meds. LLC v. Alkem Labs., Ltd.*, No. 18-1014-RGA, 2020 WL 4569472, *3 (D. Del. Aug. 7, 2020) (claims are construed based on what was said during prosecution, not by engaging in an *ex post facto* assessment of the prior art).[7]

## V.   IMS'S OPPOSITION CONFIRMS THAT IMS IS NOT ENTITLED TO PRE-SUIT DAMAGES FOR THE '498 PATENT FOR FAILURE TO MARK.

Micron's Motion established that it met its "low bar" of identifying products sold by SanDisk that were unmarked and subject to the marking requirement. Mot. at 23-24. IMS apparently concedes that these products were not marked, and IMS does not dispute that Micron met its initial burden or that IMS now bears the burden of producing evidence that SanDisk's products do not practice the '498 patent. IMS attempts to meet this burden only by relying on the declaration of its expert: "As Dr. Wolfe confirms, however, none of the products 'engage[] in block replacement, groups blocks into logical zones, or moves blocks between logical zones.'" Opp. at 23. This argument misstates the evidence: Dr. Wolfe only declared that he had "no evidence that any of the SanDisk products [Micron's expert] has listed engages in block replacement, groups blocks into logical zones, or moves blocks between logical zones." D.I. 310 ¶ 100. Moreover, he testified that he does not know whether SanDisk's products embody the asserted claims. Ex. 6 at 94:3-5, 210:6-15. An expert's testimony that he does not know whether

---

[7] IMS argues that Micron's products—in which blocks that do not ███████████████████████████████████████████ "is entirely different than what is disclosed in the prior art Tanaka reference that Micron asserted in IPR." Opp. at 22. This is of no moment because Micron's blocks do not meet the Court's claim construction. "Assigned blocks" must be shifted, not "previously assigned blocks."

CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY

a product embodies a claim is not evidence that it doesn't.  IMS has offered no evidence that the SanDisk products do not embody the Asserted Claims.  *WiAV Sols. LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 640 (E.D. Va. 2010) (granting summary judgment where the patentee's only relevant witness "could not say whether or not the [products] practiced the Patent").

## VI.   IMS CANNOT RECOVER WORLDWIDE DAMAGES UNDER ITS "LEAST RESTRICTIVE DEFINITION" DAMAGES THEORIES.

There is no dispute that Micron has sold billions of Accused Products that were neither made, tested, nor sold in the U.S.  Because IMS nonetheless seeks damages for *all* such wholly foreign sales, IMS bears the ultimate burden of showing that *each* such sale involved "substantial activities" in the U.S.  *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 2437073, at *3 (N.D. Cal. June 11, 2019) (explaining that plaintiff failed to identify any evidence showing that "certain sales" were domestic rather than foreign).  Because IMS provides no such evidence in its opposition, summary judgment should be granted.

IMS has not produced any evidence showing that accused sales made to a particular customer overseas were negotiated in the U.S.  Nor has it shown that any particular overseas sales were the result of a U.S.-based "design win" process.  Instead, IMS cites deposition testimony suggesting that a *single Micron employee* set up customer meetings, provided product samples, and had roadmap discussions, but it cites *nothing* to show which of Micron's numerous, distinct foreign sales involved those activities or that those activities even occurred in the U.S.  To the contrary, the testimony regarding these activities makes clear that they would be carried out by "somebody local." Opp. Ex. N at 111:19-112:4.  Similarly, IMS cites SEC filings regarding sales activities of "Micron Technology Inc., including its consolidated subsidiaries" generally, but the filings say nothing that is linked to any of the particular accused overseas sales and nothing about *where* the sales activities are occurring.  Opp. Ex. O at MIMS00023642.  IMS also cites to

**CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY**

statements showing that Micron (and its subsidiaries) "market [their] … products primarily through [their] own direct sales force and maintain sales or representative offices in [their] primary markets around the world." Opp. at 25. Again, IMS does not tie this vague mention of "marketing" to any of the numerous accused foreign sales. And, if anything, the fact that Micron has sales offices in foreign jurisdictions shows that sales activities are occurring ***outside the U.S.***, not inside. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1378 (Fed. Cir. 2016) (holding that a U.S. sale does not occur "when substantial activities of a sales transaction, including the final formation of a contract for sale encompassing all essential terms as well as the delivery and performance under that sales contract, occur entirely outside the United States").

IMS also suggests it can recover damages for every one of Micron's distinct foreign sales because Micron allegedly "controls ██████████████ and pricing of the accused products." Opp. at 24. But these ██████████████ are not the sales to customers relied upon in IMS's damages theory, and none of the cited contracts indicates that such pricing occurs in the U.S. *See, e.g.*, Opp. Ex J § 5(a). Nor has IMS shown which, if any, particular foreign sales involved products that underwent such ██████████████. In any event, *Halo* held that price-setting is insufficient to rope in wholly foreign sales as a matter of law. *Halo*, 831 F.3d at 1378 (explaining that "pricing and contracting negotiations in the United States alone do not constitute or transform [] extraterritorial activities into a sale within the United States").

In sum, IMS's evidence does not show U.S. activity, is not tied to any particular sales, and proves little more than the fact that Micron is a U.S. company that has foreign business.

## VII. IMS RAISES NO FACTS SUGGESTING THAT MICRON IS LIABLE FOR THE CONDUCT OF ITS SUBSIDIARIES.

IMS fails to raise any dispute of material fact that could result in Micron being held liable for its non-party subsidiaries' acts of alleged infringement. Despite never pleading it, IMS now

CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY

argues that Micron can be liable for the acts of its subsidiaries because it "exercises sufficient dominion and control over" them. Opp. at 25. Even if this were true, it would not be enough. To establish alter ego liability, IMS would also need to show that "the use of the corporate form would cause fraud or a similar injustice." *See T-Jat Sys. 2006 v. Expedia, Inc.*, No. 16-581-RGA-MPT, 2017 WL 896988, at *5 (D. Del. Mar. 7, 2017) (dismissing "alter ego" allegations for failure to plead the "fraud or injustice" requirement). IMS makes no showing of fraud or injustice. As such, IMS's various assertions about, *e.g.*, corporate ownership, shared corporate addresses, and overlapping corporate officers are legally insufficient to show alter ego.[8] Opp. at 25-26.

IMS also fails to raise any facts suggesting that Micron's subsidiaries allegedly infringe as its agents. IMS mentions four contracts relating to only two subsidiaries. Micron Technology, Inc. isn't even a party to one of them, so it creates no agency relationship. *See* Opp. Ex. M. And the other contracts *state expressly* that ███████████ exists and that they are ███████ ████ Opp. Ex. J §§ 5(a), 18(a); Ex. K §§ 2.4.5, 9.5; Ex. L §§ 2.4.5, 9.5. Moreover, the contracts actually give the ███████████████. Opp. Ex. J § 3, *see also* Opp. Exs. K and L (including no provision restricting subsidiary's sales). IMS fails to cite any provisions showing that subsidiaries are acting on Micron's behalf and are subject to its control when they allegedly infringe. Worse, IMS produced no evidence relating to any supposed agency relationship with Micron's dozens of other subsidiaries not mentioned in these contracts. *See* Opp. Ex. P.

## VIII. CONCLUSION

For these reasons, Micron's Motion for Summary Judgment should be granted.

---

[8] The *Limestone* case is of no assistance to IMS. Opp. at 27. That court denied a similar motion for summary judgment due to disputed facts concerning potential injustice Limestone could suffer regarding its theory that Micron subsidiaries were inducing customers to import products. *Limestone Memory Sys. LLC v. Micron Tech., Inc.*, No. SA CV 15-0278-DOC (KESx), 2019 WL 8690217, at *18 (C.D. Cal. Dec. 26, 2019). IMS has not made or pled such an accusation.

**CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY**

/s/ Frederick L. Cottrell, III

OF COUNSEL:

Jared Bobrow, (Pro Hac Vice)
Jason Lang, (Pro Hac Vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Tel: +1 650-614-7400
jbobrow@orrick.com
jlang@orrick.com

Will Melehani (Pro Hac Vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Tel: +1 415-773-5700
wmelehani@orrick.com

Olamide Olusesi (Pro Hac Vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C.20005-1706
Tel: +1 202-339-8400
oolusesi@orrick.com

Frederick L. Cottrell, III (#2555)
Travis S. Hunter (#5350)
Tyler E. Cragg (#6398)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Tel:  + 1-302-658-6541
cottrell@rlf.com
hunter@rlf.com
cragg@rlf.com

*Attorneys for Defendant
Micron Technology, Inc.*

DATED:  May 2, 2022

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2022, I caused true and correct copies of *Micron Technology, Inc.'s Reply Brief in Further Support of Its Motion for Summary Judgment* to be served upon the following counsel via electronic mail:

Brian E. Farnan
Michael J. Farnan
Farnan LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
Email: bfarnan@farnanlaw.com
Email: mfarnan@farnanlaw.com

Edward C. Flynn
Philip E. Levy
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Email: EFlynn@eckertseamans.comEmail:
PLevy@eckertseamans.com

/s/ Tyler E. Cragg
Tyler E. Cragg (#6398)
cragg@rlf.com